IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

FIONA HAVLISH, in her own right                    :
and as Executrix of the **ESTATE OF**              :
**DONALD G. HAVLISH, JR**., Deceased,              :
                                                   :
**RUSSA STEINER** in her own right                 :
and as Executrix of the **ESTATE OF**              :
**WILLIAM R. STEINER**, Deceased,                  :
                                                   :
**CLARA CHIRCHIRILLO**, in her                     :
own right and as Executrix of the                  :
**ESTATE OF PETER CHIRCHIRILLO**,                  :  *The addresses of Plaintiffs and*
Deceased,                                          :  *all Class Plaintiffs/Class Decedents*
                                                      *are not included in this Complaint in*
**TARA BANE** in her own right                     :  *an attempt to preserve both privacy*
and as Executrix of the **ESTATE OF**              :  *and security.*
**MICHAEL A. BANE**, Deceased,                     :
                                                   :
**GRACE M. PARKINSON-GODSHALK**                    :
in her own right and Administratrix of             :
of the **ESTATE OF WILLIAM R.**                    :
**GODSHALK**, Deceased                             :
                                                   :  CLASS ACTION
**ELLEN L. SARACINI**, in her                      :
own right and as Executrix of the **ESTATE**       :
**OF VICTOR J. SARACINI**, Deceased                :
                                                   :
and                                                :
                                                   :
**THERESANN LOSTRANGIO**, in her                   :
own right and as Executrix of the **ESTATE**       :
**OF JOSEPH LOSTRANGIO**, Deceased                 :
                                                   :
            **Plaintiffs**                         :
                                                   :
            v.                                     :  CIVIL ACTION NO.
                                                   :
SHEIKH USAMAH BIN-MUHAMMAD                         :
BIN-LADEN, a/k/a OSAMA BIN-LADEN                   :
     Address/location unknown                      :
                                                   :
THE TALIBAN,                                       :
     Address/location unknown                      :
                                                   :

MUHAMMAD OMAR,                                     :
      Address/location unknown          :
                                                            :
AL QAEDA/ISLAMIC ARMY,                       :
      Address/location unknown          :
                                                            :
***SOVEREIGN STATE DEFENDANTS***:    :
                                                            :
THE ISLAMIC EMIRATE OF                      :
AFGHANISTAN,                                        :
      c/o The Permanent Representative    :
      of the Islamic State of Afghanistan    :
      to the United Nations                        :
      360 Lexington Avenue, 11th Floor     :
      New York, NY  10017                      :
                                                            :
THE ISLAMIC REPUBLIC OF IRAN,         :
      c/o The Permanent Representative    :
      of the Islamic State of Iran              :
      to the United Nations                        :
      360 Lexington Avenue, 11th Floor     :
      New York, NY  10017                      :
      or                                                     :
      2209 Wisconsin Avenue, NW           :
      Washington, DC  20007                   :
                                                            :
THE REPUBLIC OF IRAQ,                        :
      c/o The Permanent Representative    :
      of Iraq to the United Nations           :
      14 East 79th Street                           :
      New York, NY  10021                      :
      or                                                     :
      c/o the Algerian Embassy               :
      Iraqi Interests Section                    :
      1801 P Street, N.W.                         :
      Washington, DC  20036                   :
                                                            :
***TERRORIST/HIJACKER***                       :
***DEFENDANTS***:                                    :
                                                            :
THE ESTATE OF                                       :
MARWAN AL-SHEHHI, aka Marwan        :
Yusif Muhammad Rashid Al-Shehi,          :
      Address/location unknown          :
                                                            :
THE ESTATE OF                                       :

FAYEZ RASHID AHMED HASSAN    :
AL QADI BANIHAMMAD, aka    :
Fayez Ahmed, Banihammad Fayez,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
AHMED ALGHAMDI, aka Ahmed    :
Salah Alghamdi,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
HAMZA ALGHAMDI, aka Hamza    :
Al-Ghamdi, Hamza Ghamdi,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
MOHAND ALSHEHRI, aka Mohammed    :
Alshehhi,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
SATAM M. A. AL SUQAMI,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
ABDULAZIZ ALOMARI,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
WALEED M. ALSHEHRI,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
WAIL M. ALSHEHRI,    :
      Address/location unknown    :
    :

THE ESTATE OF    :
MOHAMED ATTA,  aka Mehan Atta,    :
Mohammad El Amir, Mohamed El Sayed,    :
      Address/location unknown    :

    :
THE ESTATE OF    :
KHALID ALMIHDHAR, aka Sannan    :

Al-Makki, aka Khalid Bin Muhammad,   :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
NAWAF ALHAZMI, aka Nawaf Al-Hazmi, :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
HANI HANJOUR, aka Hani Saleh Hanjour, :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
SALEM ALHAMZI,             :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
MAJED MOQED, aka Majed M. GH    :
Moqed,                       :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
ZIAD SAMIR JARRAH, aka Zaid     :
Jarrahi,                     :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
AHMED IBRAHIM A. AL HAZNAWI,   :
aka Ahmed Alhaznawi,         :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
SAEED ALGHAMDI, aka Abdul Rahman  :
Saed Alghamdi, Ali S Alghamdi,    :
     Address/location unknown    :
                              :

THE ESTATE OF                   :
AHMED ALNAMI, aka Ali Ahmed    :
Alnami,                     :
     Address/location unknown    :


                              :

ZACARIAS MOUSSAOUI,        :
     c/o United States Marshal Service  :
     United States District Court    :

Eastern District of Virginia       :
        :
***EXECUTIVE ORDER/SEIZED ASSETS***  :
***DEFENDANTS:***           :
        :
ABU SAYYAF GROUP (a.k.a.     :
AL HARAKAT AL ISLAMIYYA),   :
    Address/location unknown     :
        :
ARMED ISLAMIC GROUP (GIA),   :
(a.k.a. AL-JAMA'AH AL-ISLAMIYAH :
AL-MUSALLAH; a.k.a. GIA;     :
 a.k.a. GROUPEMENT ISLAMIQUE  :
ARME),            :
      1929 5th St., Suite 204, Minneapolis,:
      Minnesota, U.S.A.      :
        :
HARAKAT ul-MUJAHIDIN (HUM),   :
(a.k.a. HARAKAT UL-MUJAHIDEEN;  :
a.k.a. HARAKAT UL-ANSAR;    :
a.k.a. HUA; a.k.a. HUM)     :
    Address/location unknown     :
        :
AL-JIHAD (a.k.a. EGYPTIAN AL-JIHAD; :
a.k.a. EGYPTIAN ISLAMIC JIHAD;  :
 a.k.a. JIHAD GROUP; a.k.a. NEW JIHAD) :
(EGYPTIAN ISLAMIC JIHAD),   :
    Address/location unknown     :
        :
ISLAMIC MOVEMENT OF      :
UZBEKISTAN (IMU),       :
    Address/location unknown     :
        :
ASBAT al-ANSAR,        :
    Address/location unknown     :
        :
SALAFIST GROUP FOR CALL    :
and COMBAT,          :
    Address/location unknown     :
        :
LIBYAN ISLAMIC FIGHTING GROUP, :
    Address/location unknown     :
        :
AL-ITIHAAD al-ISLAMIYA (AIAI),   :

Address/location unknown                        :
                                                :
ISLAMIC ARMY OF ADEN,                           :
    Address/location unknown                        :
                                                :
MUHAMMAD ATEF (a/k/a Subhi Abu                  :
Sitta, Abu Hafs Al Masri) (a.k.a.              :
ABDULLAH, Sheikh Taysir; a.k.a.                 :
ABU HAFS; a.k.a. ABU SITTA, Subhi;             :
a.k.a. ATEF, Muhammad; a.k.a. ATIF,            :
Mohamed; a.k.a. ATIF, Muhammad; a.k.a.         :
EL KHABIR, Abu Hafs el Masry; a.k.a.           :
TAYSIR);                                        :
    Address/location unknown                        :
                                                :
SAYF al-ADL,                                    :
    Address/location unknown                        :
                                                :
SHAYKH SA'ID (a/k/a Mustafa                     :
Muhammad Ahmad),                                :
    Address/location unknown                        :
                                                :
ABU HAFS theMAURITANIAN                         :
(a/k/a Mahfouz Ould al-Walid,                  :
Khalid Al-Shanqiti),                            :
    Address/location unknown                        :
                                                :
IBN AL-SHAYKH al-LIBI,                          :
    Address/location unknown                        :
                                                :
ABU ZUBAYDAH (a/k/a Zayn al-Abidin             :
Muhammad Husayn, Tariq),                        :
    Address/location unknown                        :
                                                :
ABD al-HADI al-IRAQI                            :
(a/k/a Abu Abdallah),                          :
    Address/location unknown                        :
                                                :
AYMAN al-ZAWAHIRI,                              :
    Address/location unknown                        :
                                                :
THIRWAT SALAH SHIHATA (a.k.a.                   :
ABDALLAH, Tarwat Salah; a.k.a.                  :
THIRWAT, Salah Shihata; a.k.a.                  :
THIRWAT, Shahata),                              :
    Address/location unknown                        :

                                                    :
TARIQ ANWAR al-SAYYID AHMAD,                        :
(a/k/a Fathi, Amr al-Fatih),                        :
      Address/location unknown      :
                                                    :
MUHAMMAD SALAH (a/k/a Nasr Fahmi                    :
Nasr Hasanayn),                                     :
      Address/location unknown      :
                                                    :
MAKHTAB AL-KHIDAMAT/AL KIFAH,                       :
      Address/location unknown      :
                                                    :
WAFA HUMANITARIAN                                   :
ORGANIZATION,                                       :
      Mogadishu, Somalia;           :
      P.O. Box 3313, Dubai, U.A.E.  :
                                                    :
AL RASHID TRUST,                                    :
      Address/location unknown      :
                                                    :
MAMOUN DARKAZANLI IMPORT-                           :
EXPORT COMPANY,                                     :
      Uhlenhorsterweg 34 11,        :
      Hamburg, Germany              :
                                                    :
ABDULLAH AHMED ABDULLAH,                            :
      Address/location unknown      :
                                                    :
HAJI ABDUL MANAN AGHA,                              :
      Address/location unknown      :
                                                    :
AL-HAMATI SWEETS BAKERIES,                          :
      Address/location unknown      :
                                                    :
MUHAMMAD AL-HAMATI,                                 :
      Address/location unknown      :
                                                    :
AMIN AL-HAQ,                                        :
      Address/location unknown      :
                                                    :
SAQAR AL-JADAWI,                                    :
      Address/location unknown      :
                                                    :
AHMAD SA'ID AL-KADR,                                :
      Address/location unknown      :
                                                    :

ANAS AL-LIBY,                                   :
     Address/location unknown             :
                                          :
AHMAD IBRAHIM AL-MUGHASSIL,     :
     Address/location unknown             :
                                          :
ABDELKARIM HUSSEIN MOHAMED      :
AL-NASSER,                                      :
     Address/location unknown             :
                                          :
AL-NUR HONEY PRESS SHOPS,        :
     Sanaa, Yemen                         :
                                          :
YASIN AL-QADI,                                  :
     Address/location unknown             :
                                          :
SA'D AL-SHARIF,                                 :
     Address/location unknown             :
                                          :
AL-SHIFA' HONEY PRESS FOR        :
INDUSTRY AND COMMERCE,           :
     P.O. Box 8089, Al-Hasabah,           :
     Sanaa, Yemen                         :
                                          :
IBRAHIM SALIH MOHAMMED           :
AL-YACOUB,                                      :
     Address/location unknown             :
                                          :
AHMED MOHAMMED HAMED ALI,       :
     Address/location unknown             :
                                          :
ALI ATWA,                                       :
     Address/location unknown             :
                                          :
MUHSIN MUSA MATWALLI ATWAH,     :
     Address/location unknown             :


                                          :
BILAL BIN MARWAN,                               :
     Address/location unknown             :
                                          :
AYADI CHAFIQ BIN MUHAMMAD,       :
     Address/location unknown             :
                                          :
MAMOUN DARKAZANLI,                              :

Address/location unknown    :
    :
ALI SAED BIN ALI EL-HOORIE,    :
Address/location unknown    :
    :
MUSTAFA MOHAMED FADHIL,    :
Address/location unknown    :
    :
AHMED KHALFAN GHAILANI,    :
Address/location unknown    :
    :
RIAD HIJAZI,    :
Address/location unknown    :
    :
HASAN IZZ-AL-DIN,    :
Address/location unknown    :
    :
JAISH-I-MOHAMMED,    :
Address/location unknown    :
    :
JAM'YAH TA'AWUN AL-ISLAMIA,    :
Address/location unknown    :
    :
MUFTI RASHID AHMAD    :
LADEHYANOY,    :
Address/location unknown    :
    :
FAZUL ABDULLAH MOHAMMED,    :
Address/location unknown    :
    :
KHALID SHAIKH MOHAMMED,    :
Address/location unknown    :
    :
FAHID MOHAMMED ALLY MSALAM,    :
Address/location unknown    :

    :
IMAD FA'IZ MUGHNIYAH,    :
Address/location unknown    :
    :
RABITA TRUST,    :
Address/location unknown    :
    :
SHEIKH AHMED SALIM SWEDAN,    :
Address/location unknown    :

OMAR MAHMOUD UTHMAN, :
  Address/location unknown :
   :
ABDUL RAHMAN YASIN, :
  Address/location unknown :
   :
TOHIR YULDASHEV, :
  Address/location unknown :
   :
MOHAMMAD ZIA, :
  Address/location unknown :
   :
AARAN MONEY WIRE SERVICE INC., :
  1806 Riverside Ave., 2nd Floor, :
  Minneapolis, Minnesota, U.S.A. :
   :
ABBAS ABDI ALI, :
  Address/location unknown :
   :
ABDI ABDULAZIZ ALI, :
  Address/location unknown :
   :
ABDIRISAK ADEN, :
  Address/location unknown :
   :
ABDULLAHI HUSSEIN KAHIE, :
  Address/location unknown :
   :
AHMED NUR ALI JIM'ALE :
(a.k.a. Ahmad Nur Ali Jim'ale; :
a.k.a. Ahmad Ali Jimale; :
a.k.a. Ahmed Nur Jumale; :
a.k.a. Ahmed Ali Jumali), :
  Address/location unknown :
   :
AL BARAKA EXCHANGE LLC, :
  P.O. Box 20066, Dubai, U.A.E.; :
  P.O. Box 3313, Deira, :
  Dubai, U.A.E. :
   :
AL TAQWA TRADE, PROPERTY AND :
INDUSTRY COMPANY LIMITED :
(f.k.a. Al Taqwa Trade, Property and :
Industry; f.k.a. Al Taqwa Trade, Property :
and Industry Establishment; :

f.k.a. Himmat Establishment),                          :
    c/o Asat Trust Reg., Altenbach 8,          :
    Vaduz 9490, Liechtenstein                       :
                                                                :

AL-BARAKAAT (Mogadishu),                          :
    Address/location unknown                        :
                                                                :

AL-BARAKAAT BANK (Mogadishu),          :
    Address/location unknown                        :
                                                                :

AL-BARAKAAT BANK OF SOMALIA          :
(a.k.a. Barakaat Bank of Somalia;                    :
a.k.a. BBS),                                                      :
    Bossaso, Somalia; Mogadishu,                  :
    Somalia                                                    :
                                                                :

AL-BARAKAAT GROUP OF                          :
COMPANIES SOMALIA LIMITED                 :
(a.k.a. Al-Barakat Financial Company),         :
    Address/location unknown                        :
                                                                :

AL-BARAKAT FINANCE GROUP,                :
    Dubai, U.A.E.; Mogadishu, Somalia   :
                                                                :

AL-BARAKAT FINANCIAL                          :
HOLDING COMPANY,                                  :
    Address/location unknown                        :
                                                                :

AL-BARAKAT GLOBAL                                :
TELECOMMUNICATIONS                            :
(a.k.a. Barakaat Globetelcompany),             :
    Hargeysa, Somalia; Mogadishu,              :
    Somalia; P.O. Box 3313,                         :
    Dubai, U.A.E.                                         :
                                                                :

AL-BARAKAAT WIRING                             :
SERVICE (U.S.A.),                                       :
    2940 Pillsbury Avenue, Suite 4,              :
    Minneapolis, Minnesota 55408,             :
    U.S.A.                                                     :
                                                                :

AL-BARAKAT INTERNATIONAL                :
(a.k.a. Baraco Co.),                                        :
    P.O. Box 3313, Deira,                             :
    Dubai, U.A.E.                                         :
                                                                :

AL-BARAKAT INVESTMENTS,                      :
    Address/location unknown          :
                            :

ALBERT FRIEDRICH ARMAND                      :
HUBER (a.k.a. Ahmed Huber),                  :
    Address/location unknown          :
                            :

ALI GHALEB HIMMAT,                           :
    Address/location unknown          :
                            :

ASAT TRUST REG.,                             :
    Address/location unknown          :
                            :

BANK AL TAQWA LIMITED                        :
(a.k.a. Al Taqwa Bank;                       :
a.k.a. Bank Al Taqwa),                       :
    c/o Arthur D. Hanna & Company,    :
    10 Deveaux Street, Nassau,        :
    Bahamas; P.O. Box N-4877,         :
    Nassau, Bahamas                   :
                            :

BARAKA TRADING COMPANY,                      :
    Address/location unknown          :
                            :

BARAKAAT BOSTON (U.S.A.),                    :
    Address/location unknown          :
                            :

BARAKAAT CONSTRUCTION                        :
COMPANY,                                     :
    Address/location unknown          :
                            :

BARAKAAT ENTERPRISE (U.S.A.),                :
    Address/location unknown          :
                            :

BARAKAAT GROUP OF COMPANIES,                 :
    Address/location unknown          :
                            :

BARAKAAT INTERNATIONAL (Sweden):
    Address/location unknown          :
                            :

BARAKAAT INTERNATIONAL                       :
COMPANIES (BICO),                            :
    Address/location unknown          :
                            :

BARAKAAT INTERNATIONAL                       :
FOUNDATION,                                  :

Address/location unknown :
 :
BARAKAAT INTERNATIONAL, :
INC. (U.S.A.), :
  Address/location unknown :
 :
BARAKAAT NORTH AMERICA, INC. :
(Canada & U.S.A.), :
  Address/location unknown :
 :
BARAKAAT RED SEA :
TELECOMMUNICATIONS, :
  Address/location unknown :
 :
BARAKAAT TELECOMMUNICATIONS :
CO. SOMALIA, LTD., :
  Address/location unknown :
 :
BARAKAT TELECOMMUNICATIONS :
COMPANY LIMITED (BTELCO), :
  Bakara Market, Dar Salaam :
  Buildings, Mogadishu, Somalia; :
  Kievitlaan 16, T'veld,    :
  Noord-Holland, :
  The Netherlands :
 :
BARAKAT BANK AND REMITTANCES, :
  Address/location unknown :
 :
BARAKAT COMPUTER :
CONSULTING (BCC), :
  Address/location unknown :
 :
BARAKAT CONSULTING :
GROUP (BCG), :
  Address/location unknown :
 :
BARAKAT GLOBAL :
TELEPHONE COMPANY, :
  Address/location unknown :
 :
BARAKAT POST EXPRESS (BPE), :
  Address/location unknown :
 :
BARAKAT REFRESHMENT COMPANY, :
  Address/location unknown :

```
                                          :
BARAKAT WIRE TRANSFER                     :
COMPANY (U.S.A.),                         :
        4419 S. Brandon St., Seattle,     :
        Washington, U.S.A.                :
                                          :
BARAKO TRADING COMPANY LLC,               :
        P.O. Box 3313, Dubai, U.A.E.      :
                                          :
DAHIR UBEIDULLAHI AWEYS,                  :
        Address/location unknown          :
                                          :
GARAD JAMA (a.k.a. Garad K. Nor;          :
a.k.a. Fartune Ahmed Wasrsame),           :
        Address/location unknown          :
                                          :
GLOBAL SERVICE                            :
INTERNATIONAL (U.S.A.),                   :
        Address/location unknown          :
                                          :
HASSAN DAHIR AWEYS                        :
(a.k.a. Sheikh Hassan Dahir Aweys;        :
a.k.a. Shaykh Hassan Dahir Awes),         :
        Address/location unknown          :
                                          :
HEYATUL ULYA,                             :
        c/o Asat Trust                    :
        Reg., Altenbach 8, Vaduz 9490,    :
        Liechtenstein                     :
                                          :
HUSSEIN MAHAMUD ABDULLKADIR, :
        Address/location unknown          :
                                          :
LIBAN HUSSEIN,                            :
        Address/location unknown          :
                                          :
MOHAMED MANSOUR                           :
(a.k.a. Dr. Mohamed Al-Mansour),          :
        Address/location unknown          :
                                          :
NADA MANAGEMENT                           :
ORGANIZATION SA (f.k.a.                   :
Al Taqwa Management Organization SA),     :
        Viale Stefano Franscini 22, Lugano :
        CH-6900 TI, Switzerland           :
                                          :
```

PARKA TRADING COMPANY,                        :
     Address/location unknown              :
                                          :
RED SEA BARAKAT COMPANY                       :
LIMITED,                                      :
     Address/location unknown              :
                                          :
SOMALI INTERNATIONAL RELIEF                   :
ORGANIZATION (U.S.A.)                         :
     1806 Riverside Ave., 2nd Floor,       :
     Minneapolis, Minnesota, U.S.A.        :
                                          :
SOMALI INTERNET COMPANY,                      :
     Address/location unknown              :
                                          :
SOMALI NETWORK AB                             :
(a.k.a. SOM NET AB),                          :
     Address/location unknown              :
                                          :
YOUSSEF M. NADA,                              :
     Address/location unknown              :
                                          :
YOUSSEF M. NADA & CO.                         :
GESELLSCHAFT M.B.H.,                          :
     Kaernter Ring 2/2/5/22, Vienna        :
     1010, Austria                         :
                                          :
YOUSSEF NADA                                  :
(a.k.a. Youssef M. Nada;                      :
a.k.a. Youssef Mustafa Nada),                 :
     Address/location unknown              :
                                          :
YUSAF AHMED ALI,                              :
     Address/location unknown              :
                                          :
ZEINAB MANSOUR-FATTOUH,                       :
     Address/location unknown              :
                                          :
AL-AQSA ISLAMIC BANK (a.k.a.                  :
Al-Aqsa Al-Islami Bank),                      :
     P.O. Box 3753 al-Beireh,              :
     West Bank; Ramallah II 970,           :
     West Bank                             :
                                          :
BEIT EL-MAL HOLDINGS (A.K.A.                  :
Arab Palestinian Beit El-Mal Company;         :

A.K.A. Beit Al Mal Holdings; A.K.A.          :
Beit El Mal Al-Phalastini Al-Arabi           :
Al-Mushima Al-Aama Al-Mahaduda Ltd.;         :
A.K.A. Palestinian Arab Beit El Mal          :
Corporation, Ltd.),                          :
      P.O. Box 662, Ramallah, West Bank :
                                         :

HOLY LAND FOUNDATION FOR                               :
RELIEF AND DEVELOPMENT                       :
(F.K.A. Occupied Land Fund) (U.S.A.),        :
      525 International Parkway,       :
      Suite 509, Richardson, Texas 75081 :
      U.S.A.; P.O. Box 832390,         :
      Richardson, Texas 75083, U.S.A.; :
      9250 S. Harlem Avenue,           :
      Bridgeview, Illinois, U.S.A.;    :
      345 E. Railway Avenue, Paterson, :
      New Jersey 07503, U.S.A.;        :
      12798 Rancho Penasquito Blvd.,   :
      Suite F, San Diego, California   :
      92128, U.S.A.; Hebron, West Bank :
      Gaza; and other locations within :
      the United States; U.S.          :
                                         :

 LASHKAR E-TAYYIBA (a.k.a.                :
Army of the Righteous; a.k.a.                :
Lashkar E-Toiba; a.k.a. Lashkar-I-Taiba),    :
      Address/location unknown         :


                                         :

SULTAN BASHIR-UD-DIN                         :
Mahmood (a.k.a. Sultan                       :
Bashiruddin Mahmood; a.k.a.                  :
DR. BASHIR UDDIN MEHMOOD;                    :
a.k.a. Sultan Baishiruddin Mekmud),          :
      Address/location unknown         :
                                         :

ABDUL MAJEED (a.k.a. Chaudhry                :
Abdul Majeed; a.k.a. Abdul Majid),           :
      Address/location unknown         :
                                         :

MOHAMMED TUFAIL (a.k.a. S.M.                 :
Tufail; a.k.a. Sheik Mohammed Tufail),       :
      Address/location unknown         :
                                         :

UMMAH TAMEER E-NAU (UTN)          :
(a.k.a. Foundation for Construction;          :
a.k.a. Nation Building; a.k.a.          :
Reconstruction Foundation; a.k.a.          :
Reconstruction of the Islamic                    :
Community; a.k.a. Reconstruction of              :
the Muslim Ummah; a.k.a. Ummah          :
Tameer I-Nau; a.k.a. Ummah Tameer          :
E-Nau; a.k.a. Ummah Tamir I-Nau;          :
a.k.a. Ummat Tamir E-Nau;          :
a.k.a. Ummat Tamir I-Pau),          :
          Street 13, Wazir Akbar Khan, Kabul, :
          Afghanistan; 60-C, Nazim Ud Din          :
          Road, Islamabad F 8/4, Pakistan          :
                                                            :
AFGHAN SUPPORT COMMITTEE          :
(ASC) (a.k.a. Ahya ul Turas; a.k.a.          :
Jamiat Ayat-ur-Rhas al Islamia;          :
a.k.a. Jamiat Ihya ul Turath al Islamia;          :
a.k.a. Lajnat el Masa Eidatul Afghania),          :
          Grand Trunk Road, near Pushtoon          :
          Garhi Pabbi, Peshawar, Pakistan;          :
          Cheprahar Hadda, Mia Omar          :
          Sabaqah School, Jalalabad,          :
          Afghanistan          :
                                                            :
ABU BAKR AL-JAZIRI,          :
          Address/location unknown          :
                                                            :
ABD AL-MUSHIN AL-LIBI (a.k.a.          :
 Ibrahim Ali Muhammad Abu Bakr),          :
          Address/location unknown          :
                                                            :
REVIVAL OF ISLAMIC HERITAGE          :
SOCIETY (RIHS) (a.k.a. Jamia          :
Ihya ul Turath; a.k.a. Jamiat Ihia          :
Al-Turath AL-Islamiya; a.k.a.                    :
Revival of Islamic Society Heritage          :
on the African Continent)          :
[Pakistan & Afghanistan] (office          :
in Kuwait is NOT designated),          :
          Address/location unknown          :
                                                            :
GLOBAL RELIEF FOUNDATION, INC.          :
          P.O. Box 1406          :
          Bridgeview, IL  60455          :

```
                                          :
BENEVOLENCE INTERNATIONAL                 :
FOUNDATION, INC.                          :
P.O. Box 548                              :
Worth, IL 60482                           :
                                          :
and JOHN DOES 1-500,                      :
                                          :
                    Defendants            :
```

## CIVIL ACTION/CLASS ACTION COMPLAINT

Plaintiffs, through their undersigned attorneys, do hereby bring this

Complaint seeking damages arising out of the September 11, 2001 terrorist attacks

in which Defendants caused and conspired to cause airplanes to crash into the

World Trade Center Towers, the Pentagon and a field in Shanksville, Stony Creek

Township, Pennsylvania.  Plaintiffs demand judgment against Defendants, Osama

Bin Laden, the Taliban, Muhammad Omar, Al Qaeda, the Islamic Emirate of

Afghanistan, the Islamic Republic of Iran, the Republic of Iraq, the

terrorist/hijackers, the Executive Order Defendants and all other named defendants

(referred to collectively herein as the "Named Defendants"), as well as John Does

1 through 500 (referred to collectively herein as the "John Doe Defendants").

Plaintiffs bring this action against all Named Defendants, jointly and severally, on

behalf of themselves and all similarly situated persons and state as follows:

## JURISDICTION AND VENUE

1.      Jurisdiction arises pursuant to 28 U.S.C. §§ 1330(a), 1331 and

1332(a)(2).  Jurisdiction also arises based on Defendants' violations of 18 U.S.C. §1961 *et seq.*, ("Racketeer Influenced and Corrupt Organizations Act"), 28 U.S.C. §1350 ("Alien Tort Act"), and the Torture Victim Protection Act, PL 102-256, 106 Stat. 73 (reprinted at 28 U.S.C.A. § 1350 note (West 1993)).

2.     Venue is proper in this District pursuant to 28 U.S.C. §§ 1391(d) and 1391(f)(4).

3.     As herein alleged, actions for wrongful death, personal injury and related torts perpetrated by foreign states, such as defendants Afghanistan, Iran and Iraq, through their officials, employees and agents fall within the exceptions to jurisdictional immunity under 28 U.S.C. §§1605(a)(5) and 1605(a)(7).

## PARTIES

### *Plaintiffs*

4.     Plaintiff, **Fiona Havlish,** is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Donald G. Havlish, Jr. ("Don Havlish")**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Donald G. Havlish** was employed by AON, Inc. and worked on the 101st floor of the South Tower of the World Trade Center, Two World Trade Center, New York, New York.

5.     The Plaintiff**, Fiona Havlish,** was appointed the **Executrix of the Estate of Don Havlish**.

6.     Plaintiff, **Fiona Havlish**, brings this action on her own behalf, on behalf of the **Estate of Don Havlish**, and on behalf of all heirs of **Don Havlish**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

7.     Plaintiff, **Russa Steiner**, is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **William R. Steiner**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **William R. Steiner** was employed by Marsh, Inc. on the 97th floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.

8.     Plaintiff, **Russa Steiner**, has been appointed the **Executrix of the Estate of William R. Steiner**.

9.     Plaintiff, **Russa Steiner**, brings this action on her own behalf, on behalf of the **Estate of William R. Steiner**, and on behalf of all heirs of **William R. Steiner**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

10.     Plaintiff, **Clara Chirchirillo**, is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Peter Chirchirillo** , a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Peter Chirchirillo** was employed by Marsh, Inc. on the 98th floor of the North Tower in the World Trade Center, One

World Trade Center, New York, New York.

11.     Plaintiff, **Clara Chirchirillo**, has been appointed the **Executrix of the Estate of Peter Chirchirillo.**

12.     Plaintiff, **Clara Chirchirillo**, brings this action on her own behalf, on behalf of the **Estate of Peter Chirchirillo**, and on behalf of all heirs of **Peter Chirchirillo**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

13.     Plaintiff, **Tara Bane**, is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Michael A. Bane**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Michael A. Bane** was employed by Marsh & McLennan Company on the 100th floor of the North Tower of the World Trade Center, One World Trade Center, New York, New York.

14.     Plaintiff, **Tara Bane**, has been appointed the **Executrix of the Estate of Michael A. Bane.**

15.     Plaintiff, **Tara Bane**, brings this action on her own behalf, on behalf of the **Estate of Michael A. Bane**, and on behalf of all heirs of **Michael A. Bane**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

16.     Plaintiff, **Grace M. Parkinson-Godshalk**, is a resident of the Commonwealth of Pennsylvania and is the surviving relative (natural mother) of

**William R. Godshalk**, a resident of the State of New York and a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **William R. Godshalk** was employed by Keefe, Bruyette & Woods located on the 89th floor of the South Tower, Two World Trade Center, New York, New York.

17.    Plaintiff, **Grace M. Parkinson-Godshalk**, has been or will be appointed the Administratrix of the **Estate of William R. Godshalk**.

18.     Plaintiff, **Grace M. Parkinson-Godshalk** brings this action on her own behalf, on behalf of the **Estate of William R. Godshalk**, and on behalf of all heirs of **William R. Godshalk**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

19.    Plaintiff, **Ellen L. Saracini**, is a resident of the Commonwealth of the Pennsylvania and is the surviving spouse of **Victor J. Saracini**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Victor J. Saracini** was employed by United Airlines and was the pilot of United Flight 175 which crashed into the South Tower, Two World Trade Center, New York.

20.    Plaintiff, **Ellen L. Saracini**, has been appointed the **Executrix of the Estate of Victor J. Saracini.**

21.    Plaintiff, **Ellen L. Saracini**, brings this action on her own behalf, on

behalf of the **Estate of Victor J. Saracini**, and on behalf of all heirs of **Victor J. Saracini,** in their own right and in their capacities of beneficiaries of the Wrongful Death Survival and other claims plead in this Complaint.

22.     Plaintiff, **Theresann Lostrangio**, is a resident of the Commonwealth of Pennsylvania and is the surviving spouse of **Joseph Lostrangio**, a decedent who was killed as a result of a terrorist attack on the World Trade Center Towers in New York City on September 11, 2001.  **Joseph Lostrangio** was employed by Devonshire Group on the 77th Floor of the North Tower in the World Trade Center, One World Trade Center, New York, New York.

23.     Plaintiff, **Theresann Lostrangio**, has been appointed the Executrix of the **Estate of Joseph Lostrangio**.

24.     Plaintiff, **Theresann Lostrangio**, brings this action on her own behalf, on behalf of the **Estate of Joseph Lostrangio** and on behalf of all heirs of **Joseph Lostrangio**, in their own right and in their capacities as beneficiaries of the Wrongful Death, Survival and other claims pled in this Complaint.

25.     The above Named Plaintiffs bring this action on behalf of themselves and all similarly situated persons and entities as defined in the Class Allegations below, hereinafter referred to collectively as the "Class Plaintiffs." All persons who perished as a result of the September 11 terrorist attacks are referred to collectively as the "Class Decedents." (The addresses of Plaintiffs,

**Fiona Havlish, Russa Steiner, Clara Chirchirillo, Tara Bane, Grace Parkinson-Godshalk, Ellen L. Saracini, Theresann Lostrangio** and all Class Plaintiffs/Class Decedents are not included in this Complaint in an attempt to preserve both privacy and security.  Plaintiffs' counsel will provide the Court with personal information regarding the Named Plaintiffs and all Class Plaintiffs/Class Decedents in a confidential manner acceptable to the Court.)

### *Defendants*

26.     Defendant, Sheikh Usamah Bin-Muhammad Bin-Laden (hereinafter referred to as "Osama Bin Laden" or "Bin Laden"), is a former citizen of Saudi Arabia whose last known residence was in Afghanistan and whose current whereabouts are unknown.  At all times material hereto, Osama Bin Laden planned, conspired, funded, directed, controlled, and engaged in terrorist activities and pursuits involving intentional and willful mass murder of thousands of innocent men, women, and children.  The end result of those activities was the murder of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and all Class Decedents on September 11, 2001.

27.     Defendant Osama Bin Laden has declared jihad - holy war - against the United States on numerous occasions since 1996.  On February 23, 1998, Bin Laden urged jihad against Americans as published in the newspaper *Al Quds al-Arabi* the following:  *"the ruling to kill the Americans and their allies- civilians*

- 24 -

*and military - is an individual duty for every Muslim who can do it in any country in which it is possible to do it…"*   On August 20, 1998, President Clinton advised that the United States was taking military action against terrorist objectives in Afghanistan and Sudan: *"Our target was terror … our mission was clear to strike at the network of radical groups affiliated with and funded by Osama Bin Laden, perhaps the preeminent organizer and financer of international terrorism in the world today."*   On August 21, 1998, the United States Department of State found that: *"Bin Laden's network leads, funds and inspires a wide range of Islamic extremist groups that perpetrate acts of terrorism around the world."*

   28. At all relevant times, as of 1996, defendant the Taliban was the political regime that governed the vast majority of the population of Afghanistan. The term *"Taliban"* means "pupils" or "students" and is used for those seminarians or students of religious schools who are politically and militarily active in militant Islamic groups.   The Taliban movement started among the Afghan refugees trained in the religious schools of Pakistan financed by private Saudi funding.   Armed with religious fervor and supplied by Pakistani army intelligence, these seminarians/students were organized into a fighting force.   The Afghan Civil War enabled the Taliban's gradual takeover.   The Taliban regime imposed their ultra-purest vision of Islam with strict religious doctrine. Accordingly, the Taliban regime was deeply hostile to women, Shiites and minorities.   The regime eliminated all aspects of modern cultural, all human rights,

and all dissent.

29.    The Taliban was an unincorporated association described by the U.S. Department of Treasury, Office of Foreign Asset Control (the "OFAC") in its Overview of Sanctions Regulations as: "*(1) the political/military entity headquartered in Kandahar, Afghanistan that, as of October 21, 1999, exercised de facto control over Kandahar, Farah, Helmund, Nimruz, Heart, Badghis, Ghowr, Oruzghon, Zabol, Paktiha, Ghanzi, Nangarhar, Lowgar, Vardan, Faryab, Jowlan, Balkh, Paktiha, and Kabul; (2) its agencies and instrumentalities; (3) associated blocked persons, as determined by the U.S. Department of the Treasury and published in the Federal Register, and listed on OFAC's list of 'Specially Designated Nationals and Blocked Persons' (the SDN List)"*.

30.    Defendant Muhammad Omar ("Omar") founded the Taliban in 1996.  Since then, Omar has been the leading member of the Taliban's six member ruling council and is reportedly responsible for all financial matters.  Initially, Muhammad Omar was an obscure guerilla commander during the Afghan Civil War.  However, by 1994, Omar had a following of thousands motivated by religious militancy and proceeded by 1996 to oust the Soviets and competing warlords.  Known as "Commander of the Faithful," Omar, individually and through the Taliban organization which he controlled, supplied material support to Al Qaeda and Bin Laden in furtherance of their terroristic plans to murder Americans.  The activities of Omar as described herein were outside the scope of

immunity, if any, provided by the Foreign Sovereign Immunities Act and related statutes.

31.     Defendant the Taliban, through its officials, employees, and agents, some of whom are identified herein, willfully engaged in acts of terrorism, murder, mayhem, and/or the provision of material support and/or resources for said acts, within the borders of Afghanistan, the United States and other countries, and across state and national boundaries as described more fully herein.  The end result of those activities was the murder of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and all Class Decedents on September 11, 2001.

32.     Defendant, Al Qaeda/Islamic Army (hereinafter "Al Qaeda"), is an unincorporated association and terrorist organization dedicated to the destruction of the United States and its citizens.  Founded by Saudi Arabian Osama Bin Laden in approximately 1990, the term *Al Qaeda* means "The Base".  At all relevant times, the Al Qaeda organization was headquartered in Afghanistan and involved a cluster of military-ideological camps dedicated to their plan to establish a universal Islamic state through the use of violence.  Al Qaeda maintains terrorist "cells" throughout the world.

33.     Defendant, Al Qaeda uses violence, bombings, murder, mayhem and other terrorist tactics in order to pursue its unlawful objectives.  At all relevant times, Al Qaeda was supported, controlled, funded, protected, aided, and abetted

by all Defendants, particularly Afghanistan, Iran, Iraq and the Taliban.  At all

times, Al Qaeda was founded, headed and directed by defendant Osama Bin

Laden.

### *Sovereign State Defendants*

34.     At all relevant times, defendant the Islamic Emirate of Afghanistan

(hereinafter "Afghanistan"), was effectively a foreign sovereign controlling

substantial territory and people and conducting relations with other states and

institutions.  Islamic Emirate of Afghanistan acted through and on behalf of its

ruling party, the Taliban, and its agents, servants, and organizations, some of

whom are identified herein.  As the result of the decisive actions of the Afghan

people, the United States, Great Britain and other states after September 11, 2001,

the Islamic Emirate of Afghanistan no longer controls any territory and has ceased

to function as a state.  Although many of its officials are in hiding, some of its

senior officials are being detained by the United States and are subject to service

of process.

35.     The activities of Islamic Emirate of Afghanistan under the Taliban

regime, as described in this Complaint, were effectively deemed terrorist activities

pursuant to former President Clinton's July 4, 1999, Executive Order No. 13129

and the continuation Order of June 30, 2001, issued by President George W. Bush.

In addition, after the terrorist acts on September 11, 2001, President George W.

Bush and other senior U.S. officials clearly designated the Islamic Emirate of

Afghanistan as having supported the terrorists.  For example, <u>see</u> President George

W. Bush's September 24, 2001, Executive Order on Terrorist Financing

(Executive Order No. 13224).

36.     Defendant, Islamic Emirate of Afghanistan, under the Taliban

regime and governments, through its officials, employees and agents, some of

whom are identified herein, willfully engaged in government-sponsored acts of

conspiracy, terrorism, murder, mayhem and/or provision of material support

and/or resources for said acts, within its borders as well as those of the United

States and other countries, as described more fully herein.  The end result of those

activities was the murder of **Donald J. Havlish, Jr., William R. Steiner, Peter**

**Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini,**

**Joseph Lostrangio** and Class Decedents on September 11, 2001.

37.     Defendant, Islamic Emirate of Afghanistan, under the Taliban

regime and governments, through its officials, employees, and agents, while acting

within the scope of their office, employment, or agency, provided support for the

organization, training, financing and execution of the September 11, 2001,

hijackings and suicide missions of United Airlines Flight No.175 into Two World

Trade Center (South Tower), American Airlines Flight No. 11 into One World

Trade Center (North Tower), American Airlines Flight No. 77 into the Pentagon

building and United Airlines Flight No. 93 into a field in Western Pennsylvania

(collectively referred to herein as the "Terrorist Hijacked Flights"), making

defendant Islamic Emirate of Afghanistan subject to suit in this Court pursuant to

28 U.S.C. §§ 1605(a)(5) and 1605(a)(7).

38.    Defendant, the Islamic Republic of Iran (hereinafter referred to as

"Iran"), is a foreign state within the meaning of 28 U.S.C. §1391(f) and 1603(a).

Iran maintains an Interest Section within the United States at 2209 Wisconsin

Avenue, NW, Washington, DC 20007.

39.    Defendant, Iran, has been designated as a foreign state that sponsors

terrorism within the meaning of the Export Administration Act of 1979, 50

U.S.C.App.§ 2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C.

§2371(b).

40.    Defendant, Iran, has been found to be liable as a state sponsor of

international terrorism under 28 U.S.C. §1605(a)(7), especially in connection with

acts perpetrated by its state sponsored paramilitary terrorist organization known as

"Hizballah," in various cases before this court, including *Anderson v. the Islamic*

*Republic of Iran*, 90 F. Supp.2d 107 (D.D.C. 2000), and  *Cicippio v. The Islamic*

*Republic of Iran*, 18 F.Supp 2d 62 (D.D.C. 1998).

41.    Iran, through its officials, officers, agents and employees, provided

material support and resources to defendants Al Qaeda and Bin Laden both

directly and through its surrogate, Hizballah.  The support provided by Iran to Bin

Laden and Al Qaeda assisted in or contributed to the preparation and execution of

the plans that culminated in the Terrorist Hijacked Flights and the extrajudicial

killing of **Donald G. Halvish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and Class Decedents.

42.     Defendant, the Republic of Iraq (hereinafter referred to as "Iraq"), is a foreign state within the meaning of 28 U.S.C. §1391(f) and 1603(a).  Iraq maintains an Interest Section in the United States at the Algerian Embassy located at 1801 P Street, NW, Washington, DC 20036.

43.     Iraq has been designated as a foreign state that sponsors terrorism within the meaning of the Export Administration Act of 1979, 50 U.S.C.App.§2405(j), and the Foreign Assistance Act of 1961, 22 U.S.C. §2371(b).


44.      Iraq, through its officials, officers, agents and employees, provided material support and resources to defendants Al Qaeda, Bin Laden and other defendants.  The support provided by Iraq to Bin Laden and Al Qaeda assisted in or contributed to the preparation and execution of the plans that culminated in the Terrorist Hijacked Flights and the extrajudicial killing of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and Class Decedents.

### *Terrorist/Hijacker Defendants*

45.     Defendant, the Estate of Marwan Al-Shehhi, has an address that is not presently known to the Class Plaintiffs.  Marwan Al-Shehhi was, at all relevant

times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Marwan

Al-Shehhi has been identified by the FBI as one of the persons who hijacked

United Airlines Flight 175 and flew it into the South Tower of the World Trade

Center on September 11, 2001.  Marwan Al-Shehhi has used a birth date of May

9, 1978.  Marwan Al-Shehhi is believed to be a pilot and may have been flying the

second plane to hit the Trade Center.  Marwan Al-Shehhi went through flight

training in Florida with hijacker, Muhammad Atta.  Prior to arriving in the United

States, Marwan Al-Shehhi was a student at Technical University in Hamburg,

Germany with Atta and hijacker Ziad Jarrahi.

46.     Defendant, the Estate of Fayez Rashid Ahmed Hassan Al Qadi

Banihammad, has an address that is not presently known to the Class Plaintiffs.

Banihammad was, at all relevant times, a citizen of Saudi Arabia and a member of

Defendant Al Qaeda.  Banihammad has been identified by the FBI as one of the

persons who hijacked United Airlines Flight 175 and flew it into the South Tower

of the World Trade Center on September 11, 2001.   Banihammad has listed the

Spartan School of Aeronautics in Tulsa, Oklahoma as his home address although

school officials have no record of his attendance.  Records show that "Fayez

Ahmed" visited the Philippines once in 2000.

47.     Defendant, the Estate of Ahmed Alghamdi, also known as Ahmed

Salah Alghamdi, has an address that is not presently known to the Class Plaintiffs.

Ahmed Alghamdi was, at all relevant times, a citizen of Saudi Arabia and a

- 32 -

member of Defendant Al Qaeda.  Ahmed Alghamdi has been identified by the FBI

as one of the persons who hijacked United Airlines Flight 175 and flew it into the

South Tower of the World Trade Center on September 11, 2001.   Ahmed

Alghamdi has been identified as one of five hijackers who fraudulently obtained

state identity cards in Virginia.  *Al Watan,* an Arabic newspaper, reported that

Alghamdi was a Saudi from Bahi province who left the country in early 2000 for

Chechnya.  Immigration records in the Philippines showed he made several visits

in the past two years.  Alghamdi has direct links to Osama Bin Laden and the Al

Qaeda terrorism network.

48.     Defendant, the Estate of Hamza Alghamdi, also known as Hamza

Al-Ghamdi, has an address that is not presently known to the Class Plaintiffs.

Hamza Alghamdi was, at all relevant times, a citizen of Saudi Arabia and a

member of Defendant Al Qaeda.  Hamza Alghamdi has been identified by the FBI

as one of the persons who hijacked United Airlines Flight 175 and flew it into the

South Tower of the World Trade Center on September 11, 2001.   Although there

are few facts about Hamza Alghamdi, U.S. Officials have identified him as having

known links to Osama Bin Laden's Al Qaeda network.

49.     Defendant, the Estate of Mohand Alshehri, has an address that is not

presently known to the Class Plaintiffs.  Mohand Alshehri was, at all relevant

times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Mohand

Alshehri has been identified by the FBI as one of the persons who hijacked United

Airlines Flight 175 and flew it into the South Tower of the World Trade Center on September 11, 2001.

50.     Defendant, the Estate of Satam M. A. Al Suqami, has an address that is not presently known to the Class Plaintiffs.  Satam Al Suqami was, at all relevant times, a citizen of the United Arab Emirates and a member of Defendant Al Qaeda.  Satam Al Suqami has been identified by the FBI as one of the persons who hijacked American Airlines Flight 11 and flew it into the North Tower of the World Trade Center on September 11, 2001.   Satam Al Suqami has used a birth date of June 28, 1976.  Investigators have linked Suqami to Raed Hijazi who has been implicated in a plot to kill Americans and other tourists in Jordan on January 1, 2000.  Al Suqami's last known address was the United Arab Emirates.

51.     Defendant, the Estate of Abdulaziz Alomari, has an address that is not presently known to the Class Plaintiffs.  Abdulaziz Alomari was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Abdulaziz Alomari  has been identified by the FBI as one of the persons who hijacked American Airlines Flight 11 and flew it into the North Tower of the World Trade Center on September 11, 2001.  Abdulaziz Alomari has used birth dates of December 24, 1972 and May 28, 1979.  Alomari is believed to be pilot. According to U.S. Authorities, Alomari is known to have used false IDs including a Virginia drivers license that he fraudulently obtained a month before the attack on the World Trade Center.

52.     Defendant, the Estate of Waleed M. Alshehri, has an address that is not presently known to the Class Plaintiffs.  Waleed Alshehri was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Waleed Alshehri has been identified by the FBI as one of the persons who hijacked American Airlines Flight 11 and flew it into the North Tower of the World Trade Center on September 11, 2001.  Alshehri held multiple, false passports.  Alshehri has used multiple birth dates including September 13, 1974; January 1, 1976 and March 3, 1976.  Alshehri is known to have had direct contacts with Osama Bin Laden's Al Qaeda terrorism network.

53.     Defendant, the Estate of Wail M. Alshehri, has an address that is not presently known to the Class Plaintiffs.  Wail Alshehri was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Wail Alshehri has been identified by the FBI as one of the persons who hijacked American Airlines Flight 11 and flew it into the North Tower of the World Trade Center on September 11, 2001.  Alshehri is believed to be a pilot.  Alshehri has used a birth date of September 1, 1968 and has used a rental address in Hollywood, Florida.

54.     Defendant, the Estate of Mohamed Atta, has an address that is not presently known to the Class Plaintiffs.  Mohamed Atta was, at all relevant times, a citizen of Egypt and a member of Defendant Al Qaeda.  Mohamed Atta has been identified by the FBI as one of the persons who hijacked American Airlines Flight 11 and flew it into the North Tower of the World Trade Center on September 11,

2001.   Atta is believed to have piloted the first plane into the World Trade Center.

Investigation reveals that he studied at the Technical University in Hamburg,

Germany and received flight training in Florida.   Investigators believe that Atta

met with Iraqi intelligence officials in Prague and also met with Islamic extremists

in Spain.   Atta also inquired about crop dusters in Florida.   In Atta's luggage,

which did not make American Airlines Flight 11, investigators found a four-page

handwritten document in Arabic that encouraged the hijackers to pray and conquer

their fears of death and included a checklist for the day of the attack.

55.     Defendant, the Estate of Kahlid Almihdhar, has an address that is

not presently known to the Class Plaintiffs.   Kahlid Almihdhar was, at all relevant

times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.   Kahlid

Almihdhar has been identified by the FBI as one of the persons who hijacked

American Airlines Flight 77 and flew it into the Pentagon Building on September

11, 2001.   Almihdhar is believed to have met with Bin Laden operatives in

Malaysia in early 2000.

56.     Defendant, the Estate of Nawaf Alhazmi, has an address that is not

presently known to the Class Plaintiffs.   Nawaf Alhazmi was, at all relevant times,

a citizen of Saudi Arabia and a member of Defendant Al Qaeda.   Nawaf Alhazmi

has been identified by the FBI as one of the persons who hijacked American

Airlines Flight 77 and flew it into the Pentagon Building on September 11, 2001.

A car registered to Alhazmi was found at Dulles International Airport the day after

the attacks. It contained a cashiers check made out to a flight school in Phoenix.

Also found were four drawings of the cockpit of a 757 jet and a box-cutter type

knife.  Alhazmi also had maps of Washington and New York as well as a four-

page handwritten document in Arabic which included a checklist for the day of the

attack identical to the one found in the luggage of fellow terrorist Mohamed Atta

and also identical to a third such document recovered from the crash site in

Pennsylvania.  Alhazmi lived with terrorists Almihdhar and Hani Hanjour in the

San Diego area during the year 2000.  Alhazmi also had New Jersey mailbox drop

addresses in Ft. Lee and Wayne.

57.    Defendant, the Estate of Hani Hanjour, has an address that is not

presently known to the Class Plaintiffs.  Hani Hanjour was, at all relevant times, a

citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Hani Hanjour has

been identified by the FBI as one of the persons who hijacked American Airlines

Flight 77 and flew it into the Pentagon Building on September 11, 2001.

Investigators advised that Hanjour is believed to have been at the controls of the

Boeing 757 that crashed into the Pentagon.  Hanjour had flight training in San

Diego, Phoenix and Scottsdale, Arizona.  Hanjour is one of five hijackers

identified as obtaining a false Virginia identity card at the Arlington, Virginia

Department of Motor Vehicles on August 2, 2001.  Hanjour lived in the United

States intermittently for more than a decade before the attacks.  Hanjour reportedly

left his home in the City of Taif, Saudi Arabia for residence in the United Arab

Emirates in December 2000.

58.     Defendant, the Estate of Salem Alhamzi, has an address that is not presently known to the Class Plaintiffs.  Salem Alhamzi was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Salem Alhamzi has been identified by the FBI as one of the persons who hijacked American Airlines Flight 77 and flew it into the Pentagon Building on September 11, 2001. Alhamzi is believed to have had addresses in Fort Lee and Wayne, New Jersey. Alhamzi was among other Flight 77 terrorists who belonged to a gym in Greenbelt, Maryland, and frequented the same in early September.  Alhamzi was among five terrorists who acquired false identification cards on August 2, 2001 from the Arlington, Virginia, Department of Motor Vehicles.

59.     Defendant, the Estate of Majed Moqed, has an address that is not presently known to the Class Plaintiffs.  Majed Moqed was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Majed Moqed has been identified by the FBI as one of the persons who hijacked American Airlines Flight 77 and flew it into the Pentagon Building on September 11, 2001.  Moqed was one of a number of terrorists who acquired false identification cards in Virginia on August 2, 2001 and who was seen in Maryland between September 2 - 6, 2001 where they were seen working out at a gym in Greenbelt, Maryland.

60.     Defendant, the Estate of Ziad Samir Jarrah, has an address that is not presently known to the Class Plaintiffs.  Jarrah was, at all relevant times, a citizen

of Saudi Arabia and a member of Defendant Al Qaeda. Jarrah has been identified

by the FBI as one of the persons who hijacked United Airlines Flight 93 and flew

it into a field in Shanksville, Pennsylvania on September 11, 2001. Jarrah is listed

as a pilot in Hamburg, Germany aviation records and is believed to have been the

pilot aboard Flight #93 which crashed in Stony Creek Township, Pennsylvania.

Jarrah is believed to be part of the terrorist cell in Hamburg, Germany that

included terrorists Mohamed Atta and Marwan Al-Shehhi.

61. Defendant, the Estate of Ahmed Ibrahim A. Al Haznawi has an

address that is not presently known to the Class Plaintiffs. Ahmed Al Haznawi

was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al

Qaeda. Al Haznawi has been identified by the FBI as one of the persons who

hijacked United Airlines Flight 93 and flew it into a field in Shanksville,

Pennsylvania on September 11, 2001. Al Haznawi has used a birth date of

October 11, 1980 and is believed to be from the Saudi town of Baljurshi.

62. Defendant, the Estate of Saeed Alghamdi, has an address that is not

presently known to the Class Plaintiffs. Alghamdi was, at all relevant times, a

citizen of Saudi Arabia and a member of Defendant Al Qaeda. Alghamdi has been

identified by the FBI as one of the persons who hijacked United Airlines Flight 93

and flew it into a field in Shanksville, Pennsylvania on September 11, 2001.

Investigators report that Alghamdi has been linked to Bin Laden's Al Qaeda

terrorist network. Alghamdi has also made several trips to the Philippines in the

last two years.

63.     Defendant, the Estate of Ahmed Alnami, has an address that is not presently known to the Class Plaintiffs.  Ahmed Alnami was, at all relevant times, a citizen of Saudi Arabia and a member of Defendant Al Qaeda.  Ahmed Alnami has been identified by the FBI as one of the persons who hijacked United Airlines Flight 93 and flew it into a field in Shanksville, Pennsylvania on September 11, 2001.  There is little known information about Alnami. He is believed to have lived in the Delray Beach of Florida.

64.     Defendants identified in paragraphs 45 through 56 above are hereinafter referred to collectively as the "Hijackers."

65.     Defendant, Zacarias Moussaoui, a/k/a "Shaqil," a/k/a "Abu Khalid al Sahrawi," ("Moussaoui") was born in France of Moroccan descent on May 30, 1968. Before 2001 he was a resident of the United Kingdom.  Moussaoui is a member of Al Qaeda and is currently under indictment in the United States District Court for the Eastern District of Virginia for, among other things, conspiracy to commit acts of terrorism and the murders of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and the Class Decedents.

66.     At times relevant hereto, Osama Bin Laden and Al Qaeda committed and threatened to further commit acts of violence and terror against the United States and its citizens.  The Taliban and Islamic Emirate of Afghanistan aided

these terrorist schemes by, among other things, allowing territory under their control to be used as a safe-haven and base of operations for Osama Bin Laden and the Al Qaeda organization.  In 1999, the United States government recognized that these activities constituted an unusual and extraordinary threat to the nation's security and foreign policy.  President Clinton issued Executive Order No. 13129, declaring a national emergency to deal with that threat.  The Order, issued under the authority of International Emergency Economic Powers Act (50 U.S.C. §§ 1701-1706) ("IEEPA"), the National Emergencies Act (50 U.S.C. § 1601 *et seq.*) and §301 of Title 3, United States Code, imposed an asset freeze against the Taliban.  That asset freeze was subsequently continued by President George W. Bush through a Presidential Order issued on July 2, 2001.

67.    Defendants, Islamic Emirate of Afghanistan and the Taliban, through their officials, employees, and agents, while acting within the scope of their office, employment, or agency, provided support for the organization, training, and execution of terrorist activities carried out by Al Qaeda and Bin Laden, including the Terrorist Hijacked Flights.

68.    In various public statements, Defendant the Taliban has admitted that it harbored, supported and was working in concert with Osama Bin Laden, the leader and organizer of defendant Al Qaeda.

69.    Defendants, Al Qaeda and Osama Bin Laden, have been purposely singled out by the President of the United States as entities that commit, threaten

to commit, or support terrorism, specifically including those acts which resulted in the September 11, 2001, murders caused by the Terrorist Hijacked Flights.  Al Qaeda, Bin Laden and the Taliban conspired among themselves and with all other Defendants to plan and commit crimes against **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and the Class Decedents and other United States citizens and their property across state and national borders.  Accordingly, all Defendants are subject to liability to the Named Plaintiffs and Class Plaintiffs.

70.     On September 24, 2001, President George W. Bush issued Executive Order No. 13224, ordering the Secretary of State, in consultation with the Secretary of the Treasury and the Attorney General, to identify all persons or entities which "*assisted in, sponsored, or provided financial, material or technological support for, or financial or other services to or in support of*" acts of terrorism and to freeze the assets of those persons and entities.  Pursuant to that Executive Order, the State Department has identified a number of persons and entities as "Specially Designated Global Terrorists" ("SDGT's").

### *Executive Order/Seized Assets Defendants*

71.     As a result of their participation in and contribution to the terrorist acts perpetrated on September 11, 2001, the following Defendants have been identified by the State Department, the Treasury Department and the Attorney General as SDGTs (hereinafter referred to as the "Global Terrorists").  Many of

the addresses of these Global Terrorists are presently unknown to the Class

Plaintiffs but may become known as a result of discovery.  Those Global

Terrorists are as follows:

        (1)     Abu Sayyaf Group (a.k.a. Al Harakat Al Islamiyya);

        (2)     Armed Islamic Group (GIA), (a.k.a. AL-Jama'ah Al-Islamiyah Al-Musallah; a.k.a. GIA; a.k.a. Groupement Islamique Arme);

        (3)     Harakat ul-Mujahidin (HUM), (a.k.a. Harakat Ul-Mujahideen; a.k.a. Harakat Ul-Ansar; a.k.a. HUA; a.k.a. HUM);

        (4)     Al-Jihad (a.k.a. Egyptian Al-Jihad; a.k.a. Egyptian Islamic Jihad; a.k.a. Jihad Group; a.k.a. New Jihad a.k.a.  Egyptian Islamic Jihad;

        (5)     Islamic Movement of Uzbekistan (IMU);

        (6)     Asbat al-Ansar;

        (7)     Salafist Group for Call and Combat;

        (8)     Libyan Islamic Fighting Group;

        (9)     Al-Itihaad al-Islamiya (AIAI);

        (10)    Islamic Army of Aden;

        (11)    Muhammad Atef (a/k/a Subhi Abu Sitta, Abu Hafs Al Masri) a.k.a. Abdullah, Sheikh Taysir; a.k.a. Abu Hafs; a.k.a. Abu Sitta, Subhi; a.k.a. Atef, Muhammad; a.k.a. Atif, Mohamed; a.k.a. Atif, Muhammad; a.k.a.El Khabir, Abu Hafs el Masry; a.k.a.Taysir);

        (12)    Sayf al-Adl;

(13)    Shaykh Sa'Id (a/k/a Mustafa Muhammad Ahmad);

(14)    Abu Hafs the Mauritanian (a/k/a Mahfouz Ould al-Walid, Khalid Al-Shanqiti);

(15)    Ibn Al-Shaykh al-Libi;

(16)    Abu Zubaydah (a/k/a Zayn al-Abidin Muhammad Husayn, Tariq);

(17)    Abd al-Hadi al-Iraqi (a/k/a Abu Abdallah);

(18)    Ayman al-Zawahiri;

(19)    Thirwat Salah Shihata (a.k.a. Abdallah, Tarwat Salah; a.k.a. Thirwat, Salah Shihata; a.k.a. Thirwat, Shahata);

(20)    Tariq Anwar al-Sayyid Ahmad,(a/k/a Fathi, Amr al-Fatih);

(21)    Muhammad Salah (a/k/a Nasr Fahmi Nasr Hasanayn);

(22)    Makhtab Al-Khidamat/Al Kifah;

(23)    Wafa Humanitarian Organization;

(24)    Al Rashid Trust;

(25)    Mamoun Darkazanli Import-Export Company;

(26)    Abdullah Ahmed Abdullah;

(27)    Haji Abdul Manan Agha;

(28)    Al-Hamati Sweets Bakeries;

(29)    Muhammad Al-Hamati;

(30)    Amin Al-Haq;

(31)    Saqar Al-Jadawi;

(32)   Ahmad Sa'id Al-Kadr;

(33)   Anas Al-Liby;

(34)   Ahmad Ibrahim Al-Mughassil;

(35)   Abdelkarim Hussein Mohamed;

(36)   Al-Nasser;

(37)   Al-Nur Honey Press Shops;

(38)   Yasin Al-Qadi;

(39)   Sa'd Al-Sharif;

(40)   Al-Shifa' Honey Press for Industry and Commerce;

(41)   Ibrahim Salih Mohammed Al-Yacoub;

(42)   Ahmed Mohammed Hamed Ali;

(43)   Ali Atwa;

(44)   Muhsin Musa Matwalli Atwah;

(45)   Bilal Bin Marwan;

(46)   Ayadi Chafiq Bin Muhammad;

(47)   Mamoun Darkazanli;

(48)   Ali Saed Bin Ali El-Hoorie;

(49)   Mustafa Mohamed Fadhil;

(50)   Ahmed Khalfan Ghailani;

(51)   Riad Hijazi;

(52)   Hasan Izz-Al-Din;

(53)    Jaish-I-Mohammed;

(54)    Jam'Yah Ta'Awun Al-Islamia;

(55)    Mufti Rashid Ahmad Ladehyanoy;

(56)    Fazul Abdullah Mohammed;

(57)    Khalid Shaikh Mohammed;

(58)    Fahid Mohammed Ally Msalam;

(59)    Imad Fa'iz Mughniyah;

(60)    Rabita Trust;

(61)    Sheikh Ahmed Salim Swedan;

(62)    Omar Mahmoud Uthman;

(63)    Abdul Rahman Yasin;

(64)    Tohir Yuldashev;

(65)    Mohammad Zia;

(66)    Aaran Money Wire Service Inc.;

(67)    Abbas Abdi Ali;

(68)    Abdi Abdulaziz Ali;

(69)    Abdirisak Aden;

(70)    Abdullahi Hussein Kahie;

(71)    Ahmed Nur Ali Jim'ale (a.k.a. Ahmad Nur Ali Jim'ale; a.k.a.

Ahmad Ali Jimale; a.k.a. Ahmed Nur Jumale; a.k.a. Ahmed Ali Jumali);

(72)    Al Baraka Exchange LLC;

(73)    Al Taqwa Trade, Property and Industry Company Limited (f.k.a. Al Taqwa Trade, Property and Industry; f.k.a. Al Taqwa Trade, Property and Industry Establishment; f.k.a. Himmat Establishment);

(74)    Al-Barakaat (Mogadishu);

(75)    Al-Barakaat Bank (Mogadishu);

(76)    Al-Barakaat Bank of Somalia (a.k.a. Barakaat Bank of Somalia; a.k.a. BBS);

(77)    Al-Barakaat Group of Companies Somalia Limited (a.k.a. Al-Barakat Financial Company);

(78)    Al-Barakat Finance Group;

(79)    Al-Barakat Financial Holding Company;

(80)    Al-Barakat Global Telecommunications (a.k.a. Barakaat Globetel company);

(81)    Al-Barakaat Wiring Service (U.S.A.);

(82)    Al-Barakat International (a.k.a. Baraco Co.);

(83)    Al-Barakat Investments;

(84)    Albert Friedrich Armand Huber (a.k.a. Ahmed Huber);

(85)    Ali Ghaleb Himmat;

(86)    Asat Trust Reg.;

(87)    Bank Al Taqwa Limited (a.k.a. Al Taqwa Bank; a.k.a. Bank Al Taqwa);

(88)   Baraka Trading Company;

(89)   Barakaat Boston (U.S.A.);

(90)   Barakaat Construction Company;

(91)   Barakaat Enterprise (U.S.A.);

(92)   Barakaat Group of Companies;

(93)   Barakaat International (Sweden);

(94)   Barakaat International Companies (BICO);

(95)   Barakaat International Foundation;

(96)   Barakaat International, Inc. (U.S.A.);

(97)   Barakaat North America, Inc. (Canada & U.S.A.);

(98)   Barakaat Red Sea Telecommunications;

(99)   Barakaat Telecommunications Co. Somalia, Ltd.;

(100)  Barakat Telecommunications Company Limited (BTELCO);

(101)  Barakat Bank and Remittances;

(102)  Barakat Computer Consulting (BCC);

(103)  Barakat Consulting Group (BCG);

(104)  Barakat Global Telephone Company;

(105)  Barakat Post Express (BPE);

(106)  Barakat Refreshment Company;

(107)  Barakat Wire Transfer Company (U.S.A.);

(108)  Barako Trading Company LLC;

(109)  Dahir Ubeidullahi Aweys;

(110)  Garad Jama (a.k.a. Garad K. Nor; a.k.a. Fartune Ahmed Wasrsame),

(111)  Global Service International (U.S.A.);

(112)  Hassan Dahir Aweys (a.k.a. Sheikh Hassan Dahir Aweys; a.k.a. Shaykh Hassan Dahir Awes);

(113)  Heyatul Ulya;

(114)  Hussein Mahamud Abdullkadir;

(115)  Liban Hussein;

(116)  Mohamed Mansour (a.k.a. Dr. Mohamed Al-Mansour);

(117)  Nada Management Organization SA (f.k.a. Al Taqwa Management Organization SA);

(118)  Parka Trading Company

(119)  Red Sea Barakat Company Limited;

(120)  Somali International Relief Organization (U.S.A.);

(121)  Somali Internet Company

(122)  Somali Network AB (a.k.a. SOM NET AB);

(123)  Youssef M. Nada

(124)  Youssef M. Nada & Co. Gesellschaft M.B.H;

(125)  Youssef Nada (a.k.a. Youssef M. Nada; a.k.a. Youssef Mustafa Nada);

(126)   Yusaf Ahmed Ali;

(127)   Zeinab Mansour-Fattouh;

(128)   Al-Aqsa Islamic Bank (a.k.a. Al-Aqsa Al-Islami Bank);

(129)   Beit El-Mal Holdings (a.k.a. Arab Palestinian Beit El-Mal Company; a.k.a. Beit Al Mal Holdings; a.k.a. Beit El Mal Al-Phalastini Al-Arabi Al-Mushima Al-Aama Al-Mahaduda Ltd.; a.k.a. Palestinian Arab Beit El Mal Corporation, Ltd.);

(130)   Holy Land Foundation For Relief And Development  (f.k.a. Occupied Land Fund) (U.S.A.);

(131) Lashkar E-Tayyiba (a.k.a. Army of the Righteous; a.k.a. Lashkar-Toiba; a.k.a. Lashkar-I-Taiba);

(132)   Sultan Bashir-Ud-Din Mahmood (a.k.a. Sultan Bashiruddin Mahmood; a.k.a. Dr. Bashir Uddin Mehmood; a.k.a. Sultan Baishiruddin Mekmud);

(133)   Abdul Majeed (a.k.a. Chaudhry Abdul Majeed; a.k.a. Abdul Majid);

(134)   Mohammed Tufail (a.k.a. S.M. Tufail; a.k.a. Sheik Mohammed Tufail);

(135)   Ummah Tameer E-Nau (UTN) (a.k.a. Foundation for Construction; a.k.a. Nation Building; a.k.a. Reconstruction Foundation; a.k.a. Reconstruction of the Islamic Community; a.k.a. Reconstruction of

the Muslim Ummah; a.k.a. Ummah Tameer I-Nau; a.k.a. Ummah Tameer

E-Nau; a.k.a. Ummah Tamir I-Nau; a.k.a. Ummat Tamir E-Nau; a.k.a.

Ummat Tamir I-Pau);

(136)  Afghan Support Committee (ASC) (a.k.a. Ahya ul Turas;

a.k.a. Jamiat Ayat-ur-Rhas al Islamia; a.k.a. Jamiat Ihya ul Turath al

Islamia; a.k.a. Lajnat el Masa Eidatul Afghania);

(137)  Abu Bakr Al-Jaziri

(138)  Abd al-Mushin Al-Libi (a.k.a. Ibrahim Ali Muhammad Abu

Bakr)

(139)  Revival of Islamic Heritage Society (RIHS) (a.k.a. Jamia Ihya

ul Turath; a.k.a. Jamiat Ihia Al-Turath AL-Islamiya; a.k.a. Revival of

Islamic Society Heritage on the African Continent) [Pakistan &

Afghanistan] (office in Kuwait is NOT designated)

(140)  Global Relief Foundation, Inc.

(141)  Benevolence International Foundation, Inc.

### *John Doe Defendants*

72.    Defendants John Does 1-500 are other officials, employees or agents

of, and/or co-conspirators with, the Named Defendants whose full identities are

presently unknown.  These John Doe defendants provided financial and other

support for, and contributed to, acts of terrorism perpetrated by the Named

Defendants.  In particular, the John Doe defendants performed acts that assisted

the Named Defendants in using the September 11, 2001, Terrorist Hijacked

Flights to commit the murder of **Donald G. Havlish, Jr., William R. Steiner,**

**Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini,**

**Joseph Lostrangio** and Class Decedents. The John Doe defendants are liable to

Plaintiff for damages resulting from those terrorist activities.

### *All Defendants*

73.     All Defendants instructed, trained, directed, financed or otherwise

supported, or assisted or conspired in the instruction, training, direction, financing,

or support of the Hijackers in connection with their terrorist plans.  In furtherance

of those plans, the Hijackers deliberately hijacked the Terrorist Hijacked Flights

and piloted those planes into the World Trade Center Towers, the Pentagon

building, and a field in Shanksville, Pennsylvania.  At all relevant times, the

Hijackers were acting within the course and scope of their authority on behalf of

all Defendants and in conspiracy with all Defendants.  Therefore, all Defendants

are liable to the Named Plaintiffs and Class Plaintiffs for the actions of the

Hijackers.

74.     All Defendants engaged in interstate and international criminal

activity in locations both inside and outside the United States in violation of 18

U.S.C. §1961 *et seq.*, (Racketeer Influenced and Corrupt Organizations Act) and

did achieve financial gain through these illegal activities.

75.     The assets of all Defendants have been frozen by virtue of the

aforementioned Executive Orders or pursuant to section 106 of the U.S.A. Patriot

Act of 2001, 107 Pub.L. 56 (Oct. 26, 2001).  Plaintiffs seek recovery of these

frozen assets and other sources of compensation for their losses and damages

caused by the September 11, 2001 hijacking.

## FACTS

### *The September 11 Terrorist Attacks*

76.     On September 11, 2001, at approximately 8:46 a.m., Defendants

Mohammed Atta, Abdul Alomari, Wail al-Shehri, Waleed al-Shehri, and Satam al-

Suqami hijacked American Airlines Flight 11 carrying 92 persons, bound from

Boston to Los Angeles, and crashed it into the North Tower of the World Trade

Center in New York. (In this Complaint, each hijacker will be identified with the

flight number of the plane he hijacked.)

77.     On September 11, 2001, at approximately 9:02 a.m., Defendants

Marwan al-Shehhi, Fayez Ahmed, a/k/a "Banihammad Fayez," Ahmed al-Ghamdi,

Hamza al-Ghamdi, and Mohald al-Shehri hijacked United Airlines Flight 175

carrying 65 persons, bound from Boston to Los Angeles, and crashed it into the

South Tower of the World Trade Center in New York.

78.     On September 11, 2001, at approximately 9:37 a.m., Defendants

Khalid al-Midhar, Nawaf al-Hazmi, Hani Hanjour, Salem al-Hamzi, and Majed

Moqed hijacked American Airlines Flight 77 carrying 64 persons, bound from

Virginia to Los Angeles, and crashed it into the Pentagon.

79.     On September 11, 2001, at approximately 10:10 a.m., Defendants Ziad Jarrah, Ahmed al-Haznawi, Saaed al-Ghamdi, and Ahmed al-Nami hijacked United Airlines Flight 93 carrying 45 persons, bound from Newark to San Francisco, and crashed it in Shanksville, Pennsylvania.

80.     At approximately 9:50 a.m., the South Tower of the World Trade Center collapsed; at approximately 10:29 a.m., the North Tower of the World Trade Center collapsed; the deaths of thousands of innocent persons were caused by the vicious actions of the terrorists and the subsequent collapse of the World Trade Center towers.

81.     The hijackings referenced above resulted in the murder of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and the Class Decedents.

82.     The hijackings referenced above were the culmination of a conspiracy among all Defendants to murder citizens of the United States.  The history of that conspiracy is set forth below.

### *Background of Al Qaeda*

83.     In or about 1989, defendants Osama Bin Laden, Muhammad Atef, a/k/a "Abu Hafs al Masry" and others founded an international terrorist group that

- 54 -

became known as "Al Qaeda" ("the Base").  Osama Bin Laden was the "emir" (prince) of Al Qaeda and was its leader at all relevant times.  Members of Al Qaeda pledged an oath of allegiance (called a "bayat") to Osama Bin Laden and Al Qaeda.

84.     From 1989 until about 1991, Al Qaeda was headquartered in Islamic Emirate of Afghanistan and Peshawar, Pakistan. In or about 1991, the leadership of Al Qaeda, including its emir Osama Bin Laden, relocated to the Sudan. Al Qaeda was headquartered in the Sudan from approximately 1991 until approximately 1996 but also maintained offices in various parts of the world. In 1996, Osama Bin Laden and other members of Al Qaeda relocated to Islamic Emirate of Afghanistan.

85.     Osama Bin Laden and Al Qaeda violently opposed the United States for several reasons. First, the United States was regarded as an "infidel" because it was not governed in a manner consistent with the group's extremist interpretation of Islam. Second, the United States was viewed as providing essential support for other "infidel" governments and institutions, particularly the governments of Saudi Arabia and Egypt, the nation of Israel, and the United Nations organization, which were regarded as enemies of the group. Third, Al Qaeda opposed the involvement of the United States armed forces in the Gulf War in 1991 and in Operation Restore Hope in Somalia in 1992 and 1993. In particular, Al Qaeda opposed the continued presence of American military forces in Saudi Arabia (and elsewhere on

the Saudi Arabian peninsula) following the Gulf War. Fourth, Al Qaeda opposed the United States Government because of the arrest, conviction and imprisonment of persons belonging to Al Qaeda or its affiliated terrorist groups or those with whom it worked. For these and other reasons, Bin Laden declared jihad, or holy war, against the United States, which he has carried out through Al Qaeda and its affiliated organizations.

86.    Al Qaeda functioned both on its own and through some of the terrorist organizations that operated under its umbrella, including: Egyptian Islamic Jihad, which was led by Ayman al-Zawahiri, and at times, the Islamic Group (also known as "el Gamaa Islamia" or simply "Gamaa't"), and a number of jihad groups in other countries, including the Sudan, Egypt, Saudi Arabia, Yemen, Somalia, Eritrea, Djibouti, Afghanistan, Pakistan, Bosnia, Croatia, Albania, Algeria, Tunisia, Lebanon, the Philippines, Tajikistan, Azerbaijan, and the Kashmiri region of India and the Chechnyan region of Russia. Al Qaeda also maintained cells and personnel in a number of countries to facilitate its activities, including in Kenya, Tanzania, the United Kingdom, Germany, Canada, Malaysia, and the United States.

87.    Al Qaeda had a command and control structure which included a "majlis al shura" (or consultation council) which discussed and approved major undertakings, including terrorist operations. Al Qaeda also had a "military committee" which considered and approved "military" matters.

- 56 -

88.     Osama Bin Laden and Al Qaeda also forged alliances with the National Islamic Front in the Sudan, with representatives of the government of Iran, and its associated terrorist group Hizballah, and with representatives of the government of Iraq for the purpose of working together against their perceived common enemy in the West, the United States.

89.     Since at least 1989, Osama Bin Laden and the terrorist group Al Qaeda sponsored, managed, and/or financially supported training camps in Islamic Emirate of Afghanistan.  Those camps were used to instruct members and associates of Al Qaeda and its affiliated terrorist groups in the use of firearms, explosives, chemical weapons, and other weapons of mass destruction. In addition to providing training in the use of various weapons, these camps were used to conduct operational planning against United States targets around the world and experiments in the use of chemical and biological weapons. These camps were also used to train others in security and counterintelligence methods, such as the use of codes and passwords, and to teach members and associates of Al Qaeda about traveling to perform operations. For example, Al Qaeda instructed its members and associates to dress in "Western" attire and to use other methods to avoid detection by security officials. The group also taught its members and associates to monitor media reports of its operations to determine the effectiveness of their terrorist activities.

90.     Since on or about 1996, Osama Bin Laden and others operated Al Qaeda from their headquarters in Islamic Emirate of Afghanistan. During this time, Bin Laden and others forged close relations with the Taliban and Muhammad Omar in Islamic Emirate of Afghanistan.  Bin Laden openly informed other Al Qaeda members and associates outside Afghanistan of their support of, and alliance with, the Taliban and Muhammad Omar.

91.     One of the principal goals of Al Qaeda was to drive the United States armed forces out of Saudi Arabia (and elsewhere on the Saudi Arabian peninsula) and Somalia by violence. These goals eventually evolved into a declaration of jihad (holy war) against America and all Americans. Members of Al Qaeda issued "fatwahs" (rulings on Islamic law) indicating that such attacks on Americans were both proper and necessary.

### The Fatwahs Against Americans

92.     At various times from on or about 1992, Osama Bin Laden, working together with members of the fatwah committee of Al Qaeda, disseminated fatwahs to other members and associates of Al Qaeda.  These fatwahs directed that United States citizens should be attacked and murdered.

93.     On various occasions, Osama Bin Laden and other co-conspirators advised members of Al Qaeda that it was proper to engage in violent actions against "infidels" (nonbelievers), even if others might be killed by such actions,

because if the others were "innocent," they would go to paradise, and if they were not "innocent," they deserved to die.

94.     On or about August 23, 1996, a declaration of jihad or holy war was disseminated that indicated that it was from the Hindu Kush mountains in Islamic Emirate of Afghanistan.  The declaration was entitled, "*Message from Usamah Bin-Muhammad Bin-Laden to His Muslim Brothers in the Whole World and Especially in the Arabian Peninsula: Declaration of Jihad Against the Americans Occupying the Land of the Two Holy Mosques; Expel the Heretics from the Arabian Peninsula*" and was a call to arms.  Bin Laden announced: "*our Muslim brothers throughout the world ... your brothers in the country of the two sacred places and in Palestine request your support.  They are asking you to participate with them against your enemies, who are also our enemies - the Israelis and Americans - by causing them as much harm as can be possibly achieved.*"

95.     In early 1997, in an interview with CNN near Jalalabad, Bin Laden announced: "*we declared jihad against the United States government because the U.S. government has commited acts that are extremely unjust, hideous and criminal whether directly or through its support of the Israeli occupation ... because in our religion it is our duty to make jihad ...*"  Continuing the interview, Bin Laden stated: "*mentioning the name of Clinton or that of the American Government provokes disgust and revulsion ... the hearts of the Muslims are filled with hatred towards the United States of America and the American president* [for

American conduct towards Iraq.]"

96.     In February 22, 1998, Osama Bin Laden endorsed a fatwah under
the banner of the "*International Islamic Front for Jihad on the Jews and
Crusaders.*" This fatwah, published in the publication *Al-Quds al-`Arabi* on
February 23, 1998, expressly referenced the United States "*continuing
aggression*" towards Iraq and stated that all Muslims should kill Americans -
including civilians - anywhere in the world where they can be found.  Bin-Laden's
Fatwah stated, in part, as follows:

> *[I]n compliance with God's order, we issue the
> following Fatwah to all Muslims:  The ruling to kill the
> Americans and their allies - civilians and military - is
> an individual duty for every Muslim who can do it in
> any country in which it is possible to do it ...  We -
> with God's help - call on every Muslim who believes in
> God and wishes to be rewarded to comply with God's
> order to kill the Americans and plunder their money
> wherever and whenever they find it.*

97.     Later in 1998, Osama Bin Laden was quoted as saying: "*If someone
can kill an American soldier, it is better than wasting time on other matters.*"

98.     In an address in or about 1998, Osama Bin Laden cited American
aggression against Islam and encouraged jihad that would eliminate the Americans
from the Arabian Peninsula.

99.     On or about May 29, 1998, Osama Bin Laden issued a statement
entitled "*The Nuclear Bomb of Islam,*" under the banner of the "*International*

*Islamic Front for Fighting the Jews and the Crusaders*," in which he stated that: "*it is the duty of the Muslims to prepare as much force as possible to terrorize the enemies of God."*

100.    In or about June 1999, in an interview with an Arabic-language television station, Osama Bin Laden issued a further threat indicating that all American males should be killed.  In October, 2001, Osama Bin Laden told a reporter with the Qatar-based *al-Jazeera* network that: "*freedom and human rights in America are doomed"* and that the U.S. government will lead its people and the West "*into an unbearable hell and a choking life.*"  Bin Laden also stated during October 2001 that: "*if inciting people to do that* [the September 11 attack on the World Trade Center and Pentagon] *is terrorism and if killing those that kill our sons is terrorism, that let history be witness that we are terrorists.*"

101.    Speaking on an Al Qaeda recruitment videotape in 2001, Bin Laden talked about the bombing of the USS Cole and announced: "*the heads of the unbelievers flew in all directions, and their limbs were scattered.  The victory of Islam had come, and the victory* [we scored] *in Yemen will continue".*

102.    During an October 7, 2001 interview with a reporter from the *al-Jazeera* network Bin Laden sought to provide a religious justification for attacks on civilians:  "*we kill the kings of the infidels, kings of the crusaders and the civilian infidels ... this is permissible in Islamic law and logically.*"  Bin Laden

concluded: "*we believe that the defeat of America is possible, with the help of God, and is even easier for us - God permitting - than the defeat of the Soviet Union* [in Afghanistan] *was before ... as to America, I say to it and its people a few words: I swear to God that America will not live in peace before peace reigns in Palestine ...."*

### The Conspiracy

103.    From about 1989 until the present, all Named Defendants and John Doe Defendants unlawfully, willfully and knowingly combined, conspired, confederated and agreed to kill and maim persons within the United States, and to create a substantial risk of serious bodily injury to other persons by destroying and damaging structures and other real and personal property within the United States. In furtherance of this conspiracy, Defendants utilized facilities of interstate and foreign commerce, often through illegal means. The intended victims of this conspiracy were United States citizens, the United States Government, and the property of the United States and its citizens.  The conspiracy resulted in the deaths of **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and the Class Decedents on September 11, 2001.

104.    In furtherance of the conspiracy, and to effect its objects, the Named Defendants and unknown John Doe Defendants committed the following acts:

a.      At various times from at least as early as 1989, Islamic

Emirate of Afghanistan, Osama Bin Laden, and others known and

unknown, provided training camps and guesthouses in Islamic Emirate of

Afghanistan, including camps known as Khalden, Derunta, Khost, Siddiq,

and Jihad Wal, for the use of Al Qaeda and its affiliated groups.

b.      At various times from at least as early as 1990, Defendants

and their unknown co-conspirators provided military and intelligence

training in various areas, including Islamic Emirate of Afghanistan, Iraq,

Iran, Pakistan, and the Sudan, for the use of Al Qaeda and its affiliated

groups.

c.      At various times from at least as early as 1989, Defendants

and others known and unknown, engaged in financial and business

transactions on behalf of Al Qaeda, including, but not limited to:

purchasing land for training camps; purchasing warehouses for storage of

items, including explosives; purchasing communications and electronics

equipment; transferring funds between corporate accounts; and transporting

currency and weapons to members of Al Qaeda and its associated terrorist

organizations in various countries throughout the world.

d.      At various times from at least 1990, Iran has provided

material support to Bin Laden and Al Qaeda, often through its state-

sponsored terrorist organization, Hizballah.  That support included advice

and assistance in planning attacks against American targets.  Information

was often shared and exchanged between Al Qaeda and Iran, as evidenced

by the following:

- For many years, the Department of State has included Iran among the "*state sponsors of terrorism.*"  Indeed, more than once in recent years, the Department of State has described Iran as "*the most active*" among state sponsors of terrorism.  Iran's role in establishing, maintaining and supporting Hizballah, the Lebanese Shiite organization with a well-documented history of terrorism, is well documented.

- In October 2001, a Bin Laden operative, Ali Mohamed, confessed in Federal District Court in New York that he and senior Bin Laden operatives had met with Hizballah security chief Imad Mughniyah who is believed to have carried out the bombings of the U.S. Embassy in Beirut and the Marine barracks in 1983.

- In June 1996, Iran's Ministry of Information and Security hosted a meeting of terrorist leaders in Tehran that included Mugniyah and senior aides to Bin Laden.  Senior aides to Bin Laden subsequently met with Mugniyah on several occasions.

- Mugniyah is believed to have made several trips to Germany for the purpose of meeting with some of the Hijackers who lived in Germany prior to traveling to the United States.

- Based on evidence developed in connection with the war in Afghanistan, senior officials in the U.S. Government, including Secretary of Defense Donald Rumsfeld, believe that Al Qaeda and Taliban members have now taken refuge in Iran.

- Secretary of Defense Donald Rumsfeld has stated that there is a direct nexis between the terrorist states of Iran and Iraq and terrorist organizations including Al Qaeda; the President of the United States, George W. Bush, has declared both Iran and Iraq to be an "*axis of evil*" supporting terrorist groups including Al Qaeda.

- On February 13, 2002, Vice President Dick Cheney stated, while addressing the Council on Foreign Relations, that Iraq and Iran were dangerous adversaries of the American people. Vice President Cheney stated: " *… we've seen all too many examples of their* [Iran and Iraq] *active support of terrorism …"*

e.        At various times, Iraq has also provided material support to Bin Laden and Al Qaeda, often through its state-run intelligence agency. That support included advice and assistance in planning attacks against American targets, and training and instruction in the execution of such attacks. Information was often shared and exchanged between Al Qaeda and Iraq, as evidenced by the following:

- The relationship between Al Qaeda and Iraq developed in the early 1990's. After the Gulf War, Iraqi agents traveled to the Sudan to participate in training exercises with Bin Laden's forces. From 1991 to 1996, there was extensive interaction between Al Qaeda and Iraqi intelligence officers.

- In the Spring of 1998, two of Bin Laden's senior military commanders met in Baghdad with Qusay Hussein, chief of Iraqi intelligence and son of Saddam Hussein. As a result of these meetings, Iraq reportedly agreed to supply Al Qaeda with training, intelligence, weapons and other support.

- According to intelligence officials of the Czech Republic, lead Hijacker Mohammed Atta and Iraqi intelligence officer Mohammed al-Ani met in Prague in June 2000. Former CIA Director James Woolsey cites this meeting as indicative of Iraqi support of and involvement in the September 11 terrorist attacks.

- In addition to Mohammed Atta, two other Hijackers met with Iraqi intelligence in the United Arab Emirates prior to travelling to the United States.

- Director Woolsey and other former and current

intelligence officials have reported many meetings between Iraqi
intelligence officers and Al Qaeda during the late 1990's in Iraq
and Islamic Emirate of Afghanistan.  According to these reports,
elite Iraqi intelligence officers provided advanced sabotage and
infiltration training to Al Qaeda operatives.

- Director Woolsey has further pointed to the training that
was reported by several witnesses to have taken place in Iraq.
The training centered on methods to hijack an aircraft using
knives.  The location of the training was an old Boeing 707 at an
airfield outside of Baghdad.

- Secretary of State Colin Powell publicly stated on
February 13, 2002 that the Bush administration "*is commited to
regime change*" because of its complicity with terrorist
organizations. On February 14, 2002, President Bush publicly
stated he would consider a wide range of options to oust Saddam
Hussein because of his terrorist activities including the support of
Al Qaeda.  The President ordered the government to review all
options involving Iraq, including military action, because the
Iraqi leaders "*need to understand I am serious*".  Addressing the
Council for Foreign Relations on February 15, 2002, Vice
President Dick Cheney stated that Iraq has been a sponsor of
terrorism: "*clearly that's got to be one* [Iraq] *we focus on ... he*
[Saddam Hussein] *has in the past had some dealings with
terrorists, clearly.*"

### *The Hijackers' Preparation*

105.    Beginning in and about 1998, Ramzi Bin al-Shibh, Mohammed Atta

(#11), Marwan al-Shehhi (#175), and Ziad Jarrah (#93), and others, formed and

maintained an Al Qaeda terrorist cell in Germany.  It was during this period that

meetings were held with representatives of Iran and Iraq.

106.    On or about January 15, 2000, Khalid Almihdhar (#77) and Nawaf

Alhazmi (#77) traveled from Bangkok, Thailand, to Los Angeles, California.

107.    On or about June 3, 2000, Mohammed Atta (#11) traveled to the

United States from Prague, Czech Republic.  On or about early July 2000, Mohammed Atta (#11) and Marwan al-Shehhi (#175) visited the Airman Flight School in Norman, Oklahoma.  They ultimatley attended flight training classes at Huffman Aviation in Venice, Florida between July and December 2000.

108.    On or about September 29, 2000, Zacarias Moussaoui contacted Airman Flight School in Norman, Oklahoma using an e-mail account he set up on September 6, 2000, with an internet service provider in Malaysia.

109.    On or about November 5, 2000, Mohammed Atta (#11) purchased flight deck videos for the Boeing 747 Model 200, Boeing 757 Model 200, and other items from a pilot store in Ohio ("Ohio Pilot Store").  One month later, he purchased flight deck videos for the Boeing 767 Model 300ER and the Airbus A320 Model 200 from the Ohio Pilot Store.

110.    Between on or about January 2001 and March 2001, Hani Hanjour (#77) attended pilot training courses in Phoenix, Arizona, including at Pan Am International Flight Academy.

111.    Between on or about February 1, 2001, and on or about February 15, 2001, Mohammed Atta (#11) and Marwan al-Shehhi (#175) took a flight check ride from Briscoe Field, Lawrenceville, Georgia.

112.    Between on or about February 26, 2001, and on or about May 29, 2001, Zacarias Moussaoui attended the Airman Flight School in Norman,

Oklahoma.

113.    On or about March 19, 2001, Nawaf Alhazmi (#77) purchased flight deck videos for the Boeing 747 Model 400, the Boeing 747 Model 200 and the Boeing 777 Model 200, and another video from the Ohio Pilot Store.

114.    Between on or about April 23, 2001, and on or about June 29, 2001, Satam Al Suqami (#11), Waleed Alshehri (#11), Ahmed Alghamdi (#175), Majed Moqed (#77), Marwan al-Shehhi (#175), Mohammed Atta (#11), Ahmed Alnami (#93), Hamza Alghamdi (#175), Mohand Alshehri (#175), Wail Alshehri (#11), Ahmed Al Haznawi (#93), Fayez Banihammad (#175), and Salem Alhazmi (#77) traveled from various points in the world to the United States.

115.    On or about May 23, 2001, Zacarias Moussaoui contacted an office of the Pan Am International Flight Academy in Miami, Florida via e-mail.

116.    On or about June 20, 2001, Zacarias Moussaoui  purchased flight deck videos for the Boeing 747 Model 400 and the Boeing 747 Model 200 from the Ohio Pilot Store.

117.    On or about July 8, 2001, Mohammed Atta (#11) purchased a knife in Zurich, Switzerland.

118.    On or about July 10 and July 11, 2001, Zacarias Moussaoui made credit card payments to the Pan Am International Flight Academy for a simulator

course in commercial flight training.

119.    On or about July 25, 2001, Ziad Jarrah (#93) traveled from the United States to Germany. On August 4, 2001, Ziad Jarrah (#93) traveled from Germany to the United States.

120.    On or about August 3, 2001, Zacarias Moussaoui purchased two knives in Oklahoma City, Oklahoma.

121.    Between August 13 and August 15, 2001, Zacarias Moussaoui attended the Pan Am International Flight Academy in Minneapolis, Minnesota, for simulator training on the Boeing 747 Model 400.

122.    On or about August 17, 2001, Zacarias Moussaoui, while being interviewed by federal agents in Minneapolis, attempted to explain his presence in the United States by falsely stating that he was simply interested in learning to fly.

123.    On or about August 17, 2001, Ziad Jarrah (#93) undertook a "check ride" at a flight school in Fort Lauderdale, Florida.

124.    During this period leading up to the September 11 attacks, the Hijackers were receiving money and support from other known and unknown Defendants.  Specific evidence of that financial support includes the following:

    a.      On or about June 29, 2000, $4,790 was wired from the United Arab Emirates ("UAE") to Marwan al-Shehhi (#175) in Manhattan.

b.      On or about July 19, 2000, $9,985 was wired from UAE into a Florida SunTrust bank account in the names of Mohammed Atta (#11) and Marwan al-Shehhi (#175).

c.      On or about July 26, 2000, in Germany, Ramzi Bin al-Shibh wired money to Marwan al-Shehhi (#175) in Florida.

d.      On or about August 7, 2000, $9,485 was wired from UAE into a Florida SunTrust bank account in the names of Mohammed Atta (#11) and Marwan al-Shehhi (#175).

e.      On or about August 30, 2000, $19,985 was wired from UAE into a Florida SunTrust bank account in the names of Mohammed Atta (#11) and Marwan al-Shehhi (#175).

f.      On or about September 18, 2000, $69,985 was wired from UAE into a Florida SunTrust bank account in the names of Mohamed Atta (#11) and Marwan al-Shehhi (#175).

g.      On or about February 23, 2001, Zacarias Moussaoui flew from London, England to Chicago, Illinois, declaring at least $35,000 cash on his Customs declaration, and then from Chicago to Oklahoma City, Oklahoma.

h.      On or about February 26, 2001, Zacarias Moussaoui  opened

a bank account in Norman, Oklahoma, depositing approximately $32,000 cash.

     i.     On or about August 14, 2000, in Yemen, Ramzi Bin al-Shibh arranged to wire money from his account in Germany to the account of a flight training school in Florida.

     j.     On or about September 25, 2000, in Hamburg, Germany, Ramzi Bin al-Shibh sent money via wire transfer to Marwan al-Shehhi (#175) in Florida.

     k.     In Summer 2001, Fayez Banihammad (#175), Saeed Alghamdi (#93), Hamza Alghamdi (#175), Waleed Alshehri (#11), Ziad Jarrah (#93), Satam Al Suqami (#11), Mohand Alshehri (#175), Ahmed Alghamdi (#93), and Ahmed Al Haznawi (#93) each opened a Florida SunTrust bank account with a cash deposit.

     l.     On June 25, 2001, Mustafa Ahmed al-Hawsawi used a cash deposit to open a checking account at a Standard Chartered Bank branch in Dubai, UAE.

     m.     On June 25, 2001, at the same Standard Chartered Bank branch in Dubai, UAE, Fayez Banihammad (#175) used a cash deposit to open a savings account and also opened a checking account.

n.      On July 18, 2001, Fayez Ahmed (#175) gave power of attorney to Mustafa Ahmed al-Hawsawi for Fayez Banihammad Standard Chartered Bank accounts in UAE.  On July 18, 2001, using his power of attorney, al-Hawsawi picked up Fayez Banihammad's VISA and ATM cards in UAE.

o.      Between July 18 and August 1, 2001, Mustafa Ahmed Al-Hawsawi caused Fayez Banihammad's VISA and ATM cards to be shipped from UAE to Fayez Banihammad in Florida. (The VISA card was then used for the first time on August 1, 2001, in Florida.)

p.      On or about July 30 and 31, 2001, in Hamburg, Germany, Ramzi Bin al-Shibh, using the name "Ahad Sabet," received two wire transfers, totaling approximately $15,000, from "Hashim Abdulrahman" in UAE.

q.      On or about August 1 and 3, 2001, Ramzi Bin al-Shibh, using the name "Ahad Sabet," wired approximately $14,000 in money orders to Zacarias Moussaoui in Oklahoma from train stations in Dusseldorf and Hamburg, Germany.

125.   On or about August 22, 2001, Fayez Ahmed (#175) used his VISA card in Florida to obtain approximately $4,900 cash, which had been deposited into his Standard Chartered Bank account in UAE the day before.

126.    On or about August 22, 2001, in Miami, Florida, Ziad Jarrah (#93) purchased an antenna for a Global Positioning System ("GPS"), other GPS related equipment, and schematics for 757 cockpit instrument diagrams. (GPS allows an individual to navigate to a position using coordinates pre-programmed into the GPS unit.)

127.    On or about August 25, 2001, Khalid Almihdhar and Majed Moqed purchased with cash tickets for American Airlines Flight 77, from Virginia to Los Angeles, California, scheduled for September 11, 2001.

128.    On or about August 26, 2001, Waleed Alshehri and Wail Alshehri made reservations on American Airlines Flight 11, from Boston, Massachusetts, to Los Angeles, California, scheduled for September 11, 2001.

129.    On or about August 27, 2001, reservations for electronic, one-way tickets were made for Fayez Banihammad and Mohand Alshehri, for United Airlines Flight 175, from Boston, Massachusetts, to Los Angeles, California, scheduled for September 11, 2001.

130.    On or about August 27, 2001, Nawaf Alhazmi and Salem Alhazmi booked flights on American Airlines Flight 77.

131.    On or about August 28, 2001, Satam Al Suqami purchased a ticket with cash for American Airlines Flight 11.

132.    On or about August 28, 2001, Mohammed Atta and Abdulaziz Alomari reserved two seats on American Airlines Flight 11.

133.    On or about August 29, 2001, Ahmed Alghamdi and Hamza Alghamdi reserved electronic, one-way tickets for United Airlines Flight 175.

134.    On or about August 29, 2001, Ahmed Al Haznawi purchased a ticket on United Airlines Flight 93 from Newark, New Jersey, to San Francisco, California, scheduled for September 11, 2001.

135.    On or about August 30, 2001, Mohammed Atta (#11) purchased a utility tool that contained a knife.

136.    On or about September 6, 2001, Satam Al Suqami (#11) and Abdulaziz Alomari (#11) flew from Florida to Boston.

## *Executing the September 11, 2001 Terrorist Attacks*

137.   On September 11, 2001, Mohammed Atta, Abdul Aziz Alomari, Satam Al Suqami, Waleed M. Alshehri, and Wail Alshehri hijacked American Airlines Flight 11, a Boeing 767, which had departed Boston at approximately 7:55 a.m. They flew Flight 11 into the North Tower of the World Trade Center in Manhattan at approximately 8:45 a.m., causing the collapse of the tower and the deaths of **William R. Steiner, Peter Chirchirillo, Michael A. Bane, Joseph Lostrangio** and thousands of Class Decedents [as of February 15, 2002, there were 2,838 dead or missing persons at the World Trade Center Towers].

138.   On September 11, 2001, Hamza Alghamdi, Fayez Banihammad, Mohand Alshehri, Ahmed Alghamdi, and Marwan al-Shehhi hijacked United Airlines Flight 175, a Boeing 767, which had departed from Boston at approximately 8:15 a.m. Upon hijacking the United Flight 175, the terrorists did murder the pilot, **Victor J. Saracini**, and thereafter flew Flight 175 into the South Tower of the World Trade Center in Manhattan at approximately 9:05 a.m., causing the collapse of the tower and the death of **Donald G. Havlish, Jr., William R. Godshalk** and thousands of Class Decedents [as of February 15, 2002, there were 2,838 dead or missing persons at the World Trade Center Towers].

139.   On September 11, 2001, Khalid Almihdhar, Majed Moqed, Nawaf

Alhazmi, Salem Alhazmi, and Hani Hanjour hijacked American Airlines Flight 77, a Boeing 757, which had departed from Virginia bound for Los Angeles, at approximately 8:10 a.m. They flew Flight 77 into the Pentagon in Virginia at approximately 9:40 a.m., causing the deaths of 184 Class Decedents.

140.   On or about September 11, 2001, Saeed Alghamdi, Ahmed Alnami, Ahmed Al Haznawi, and Ziad Jarrah hijacked United Airlines Flight 93, a Boeing 757, which had departed from Newark, New Jersey bound for San Francisco at approximately 8:00 a.m. After resistance by the passengers, Flight 93 crashed in Shanksville, Somerset County, Pennsylvania at approximately 10:10 a.m., killing the remainder [40 deaths] of the Class Decedents.

141.   As set forth above, the Hijackers used box cutters, knives, and murder to commit air piracy and murder on behalf of Osama Bin Laden, the Taliban, Muhammad Omar, Al Qaeda, Islamic Emirate of Afghanistan, the Islamic Republic of Iran, the Republic of Iraq and all other Defendants.

142.   The September 11, 2001 attacks were the culmination of a conspiracy among all Defendants to plan, finance, support and execute terroristic murder.  A detailed factual description of the planning and execution of these terrorist attacks is set forth in the Federal Indictment of Zacarias Moussaaoui.

143.   As a direct and proximate result of the intentional, willful, reckless, and careless actions of the Defendants, Class Plaintiffs and Class Decedents have suffered severe and permanent personal injuries, damages, and losses, including

the following:

(a)     Class Decedents' fear of death prior to the collapse of the World Trade Center Towers, the crash into the Pentagon and the crash of United Airlines flight 93;

(b)     the severe mental anguish suffered by Class Decedents and Class Plaintiffs;

(c)     the severe pain and suffering suffered by Class Decedents and Class Plaintiffs;

(d)     the inability of all Class Decedents to perform the usual household and personal activities that they normally would have performed through the remainder of their natural life expectancies;

(e)     loss of Class Decedents' earnings and future earning potential;

(f)     loss of Class Decedents' life and life's pleasures;

(g)     costs relating to managing the estates of all Class Decedents; and

(k)     death of the Class Decedents by way of murder as a result of the Defendants' conduct and that of their co-conspirators.

144.    The aforementioned personal injuries, death and losses incurred by the Class Plaintiffs and Class Decedents were caused by the intentional outrageous acts, recklessness, and carelessness of all Defendants, acting individually and in concert, as well as other co-conspirators not yet identified, and of their agents, servants and/or employees acting within and during the course and scope of their employment, authority, or apparent authority.

## CAUSES OF ACTION

### COUNT ONE
### *WRONGFUL DEATH*

145.    Class Plaintiffs incorporate by reference the averments in the preceding paragraphs as though fully set forth at length.

146.    Class Decedents are survived by family members entitled to recover damages from all Defendants for wrongful death.  These family members are among the Class Plaintiffs who are entitled to damages deemed as a fair and just compensation for the pecuniary injuries resulting from the deaths of the Class Decedents.

147.    The injuries and damages suffered by the Class Plaintiffs by virtue of the death the Class Decedents, and the consequences resulting therefrom, were proximately caused by the intentional and reckless acts, omissions, and other tortuous conduct of all Defendants as described herein.

148.    As a direct and proximate result of the deaths of the Class Decedents, their heirs have been deprived of future aid, assistance, services, comfort, and financial support.

149.    As a direct and proximate result of the Defendants' cowardly, barbaric and outrageous acts of murder, the heirs of the Class Decedents will forever grieve their deaths.

150.    As a further result of intentional and reckless acts, omissions, and other tortuous conduct of the Defendants, the Class Plaintiffs have been caused to

expend various sums to raise the estates of Class Decedents and have incurred

other expenses for which they are entitled to recover.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor

against all Defendants, jointly, severally, and/or individually, in an amount in

excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other

relief as this Honorable Court deems appropriate to prevent the defendants from

ever again committing the terrorist acts of September 11, 2001 or similar acts.

**COUNT TWO**
*SURVIVAL*

151.    Class Plaintiffs incorporate herein by reference the averments

contained in the preceding paragraphs as though fully set forth at length.

152.    Class Plaintiffs bring this action for damages suffered by the estates

of the Class Decedents as a result of the deaths of the Class Decedents, including

their pain and suffering, inconvenience, loss of life and life's pleasures, loss of

earnings and earning capacity, and other items of damages.

153.    As a result of the Defendants' wrongful conduct, Class Plaintiffs

suffered damages as fully set forth in the paragraphs above which are incorporated

herein by reference.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor

against all Defendants, jointly, severally, and/or individually, in an amount in

excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other

relief as this Honorable Court deems appropriate to prevent the defendants from

ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT THREE
### *ASSAULT, BATTERY AND FALSE IMPRISONMENT*

154.    Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

155.    As a result of the September 11, 2001 terrorist attacks as described above, the Class Decedents were placed in apprehension of harmful and offensive bodily contact and suffered offensive and harmful bodily contact and were mentally and physically harmed, trapped, and falsely imprisoned prior to their deaths.

156.    As a result of this assault, battery, and false imprisonment, Class Decedents suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against all named Defendants, jointly, severally, and/or individually, in an amount in excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT FOUR
### *NEGLIGENT AND/OR INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS*

157.    Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

158.    All Defendants knew that the September 11, 2001 intentional hijacking and suicide flights would injure innocent United States citizens at their place of work, leaving family members to grieve for their losses.

159.    The actions of the Defendants in using the September 11, 2001 intentional hijacking and suicide flights to murder the Class Decedents were done with a willful disregard of the rights of the Class Plaintiffs and Class Decedents.

160.    As a direct and proximate result of Defendants' conduct, Class Plaintiffs have suffered and will forever in the future suffer severe and permanent emotional distress and anxiety, permanent psychological distress and permanent mental impairment.

161.    The conduct of all Defendants was undertaken in an intentional manner to murder the Class Decedents and to cause the contemporaneous and permanent emotional suffering of the heirs of the Class Decedents.

162.    The Defendants, by engaging in this unlawful conduct, negligently and/or intentionally inflicted emotional distress upon the Class Plaintiffs.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in

excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT FIVE
### *CIVIL RICO*

163.   Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

164.   All Defendants agreed and conspired to hijack the Terrorist Hijacked Flights and attack the World Trade Center Towers, the Pentagon and other locations in violation of 18 U.S.C. §1961 *et seq.*, (Racketeer Influenced and Corrupt Organizations Act).  These attacks were a part of Defendants' larger terror plan and were perpetrated in connection with a pattern of racketeering activity that included acts of murder, kidnapping, arson, robbery and related fraudulent activities such as the procurement of false identification documents.

165.   Defendants committed and conspired to commit further RICO violations in the unlawful reproduction of naturalization or citizenship papers, obstruction of justice, obstruction of criminal investigations, obstruction of state and/or local law enforcement, false statements in applications, forgery, and false use and misuse of passports, visas, permits, and other documents.  Defendants also committed acts indictable under the Immigration and Nationality Act relating to their conduct in bringing certain aliens into the United States and harboring those aliens during their stay in this country.

166.   Defendants committed further RICO violations by virtue of their willful interference with commerce, robbery, extortion, racketeering, laundering of monetary instruments and engaging in monetary transactions in property derived from their various unlawful activities.

167.   Defendants committed further RICO violations by their unlawful use of interstate commerce facilities in the commission of murder, and liability for the interstate transportation of stolen motor vehicles such as the hijacked airliners.

168.   Defendants committed further RICO violations due to the fraud connected with certain short selling of stocks which occurred in concert with the September 11, 2001 attacks and for which profit was obtained.

169.   As a result of the Defendants' RICO violations, Class Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against all Defendants, jointly, severally, and/or individually, and demand treble damages in excess of One Billion Dollars ($1,000,000.00), plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT SIX
### *TORTURE VICTIM PROTECTION ACT*

170.   Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

171.   The actions of the Defendants as described above subjected the Class Decedents to torture and extrajudicial killing within the meaning of the Alien Tort Act, 28 U.S.C. §1350  and the Torture Victim Protection Act, Pub.L. 102-256, 106 Stat. 73 (reprinted at 28 U.S.C.A. § 1350 note (West 1993)).

172.   In carrying out the extrajudicial torture and killings of the Class Decedents, the actions of each Defendant were conducted under actual or apparent authority, or under color of law, of the foreign nations of Islamic Emirate of Afghanistan, Iran and Iraq.

173.   As a result of the Defendants' violation of the Torture Victim Protection Act, Class Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

**COUNT SEVEN**
*CONSPIRACY*

174.    Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

175.    As set forth more fully above, all Defendants, known and unknown, unlawfully, willfully and knowingly combined, conspired, confederated and agreed, tacitly and/or expressly, to kill **Donald G. Havlish, Jr., William R. Steiner, Peter Chirchirillo, Michael A. Bane, William R. Godshalk, Victor J. Saracini, Joseph Lostrangio** and the Class Decedents and other persons within the United States.

176.    As set forth above, all Defendants conspired and agreed to provide material support  and resources to Al Qaeda, Bin Laden and the Hijackers in furtherance of Defendants' overall goal to kill American citizens and other persons residing in the United States.

177.    The Defendants' conspiracy resulted in the September 11 terrorist attacks that killed the Class Decedents.

178.    As a result of the Defendants' conspiracy, Class Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

    **WHEREFORE**, Class Plaintiffs demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of One Billion Dollars ($1,000,000,000) plus interest, costs, and such other

relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT EIGHT
### *FOREIGN SOVEREIGN IMMUNITIES ACT*

179.   Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

180.   The actions of defendants Afghanistan, Iran and Iraq (the "Sovereign State Defendants") as described above violated the provisions of the Foreign Sovereign Immunities Act 28 U.S.C. §1605(a)(7).

181.   Pursuant to Pub.L. 104-208, Div. A, Title I, §101(c), 110 Stat. 3009-172 (reprinted at 28 U.S.C. § 1605 note (West Supp.), all defendants who are officials, employees or agents of the Sovereign State Defendants are individually liable to the Class Plaintiffs for damages caused by their acts which resulted in the deaths of the Class Decedents.

182.   As a result of the conduct of the Sovereign State Defendants and their officials, employees and agents that violated the federal laws cited above, the Class Plaintiffs suffered damages as fully set forth in the paragraphs above which are incorporated herein by reference.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against the Sovereign State Defendants and their officials, employees and agents, jointly, severally, and/or individually, in an amount in excess of One Billion Dollars

($1,000,000,000) plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the these defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

## COUNT NINE
### *PUNITIVE DAMAGES - ALL DEFENDANTS*

183.   Class Plaintiffs incorporate herein by reference the averments contained in the preceding paragraphs as though fully set forth at length.

184.   The actions of all Defendants, acting in concert to carry out their unlawful objectives, were malicious, outrageous and in willful, wanton, and reckless disregard of the rights of Class Plaintiffs and Class Decedents.  The Defendants, acting individually and jointly, intended to carry out actions that would end the lives of the Class Decedents.

185.   As a result of their intentional, malicious, outrageous, willful and wanton conduct, all Defendants are jointly and severally liable to Class Plaintiffs for punitive damages.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against all Defendants, jointly, severally, and/or individually, in an amount in excess of One Hundred Billion Dollars ($100,000,000,000) plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

**COUNT TEN**
*PUNITIVE DAMAGES - SOVEREIGN STATE DEFENDANTS*

186.    Class Plaintiffs incorporate herein by reference the averments

contained in the preceding paragraphs as though fully set forth at length.

187.    The actions of the Sovereign State Defendants, acting individually

and in concert to carry out their unlawful objectives, were malicious, outrageous

and in willful, wanton, and reckless disregard of the rights of Class Plaintiffs and

Class Decedents.  The Sovereign State Defendants, acting individually and jointly,

specifically intended to carry out actions that would end the lives of the Class

Decedents.

188.    Pursuant to 28 U.S.C.A. §1606, which specifically authorizes a

claim for punitive damages arising from state sponsored terrorist acts actionable

under 28 U.S.C. § 1605 (a)(7), and for the reasons stated above, the Sovereign

State Defendants are jointly and severally liable to Class Plaintiffs for punitive

damages.

189.    Pursuant to Pub.L. 104-208, Div. A, Title I, §101(c), 110 Stat. 3009-

172 (reprinted at 28 U.S.C. § 1605 note (West Supp.), all defendants who are

officials, employees or agents of the Sovereign State Defendants are individually

liable to the Class Plaintiffs for punitive damages caused by their acts which

resulted in the deaths of the Class Decedents.

**WHEREFORE**, Class Plaintiffs demand judgment in their favor against

the Sovereign State Defendants and their officials, employees or agents, jointly,

severally, and/or individually, in an amount in excess of One Hundred Billion

Dollars ($100,000,000,000) plus interest, costs, and such other relief as this

Honorable Court deems appropriate to prevent the defendants from ever again

committing the terrorist acts of September 11, 2001 or similar acts.

## CLASS ACTION ALLEGATIONS

190.  Class Definition:  Named Plaintiffs bring this action pursuant to

Rule 23 of the Federal Rules of Civil Procedure, on behalf of themselves and all

others similarly situated, as members of the proposed Plaintiff Class.  This

proposed Plaintiff Class is defined as follows:

> **All individuals and entities having standing to bring
> suit against the defendants in this Court based upon
> their status as: (1) a spouse, child or other member of
> the family of any individual who died at the World
> Trade Center in New York, the Pentagon building in
> Virginia or in the airliner crash in Shanksville,
> Pennsylvania as the result of terrorist attacks on
> September 11, 2001; or (2) a legal representative
> (including any executor, estate administrator or
> trustee) entitled to bring legal action on behalf of any
> individual who died in those terrorist attacks.**

191.  Numerosity:  The members of the Class are so numerous that their

individual joinder would be impracticable in that:

(a)  The Class includes the legal representatives and families of

over 3,000 people murdered by defendants in the September 11, 2001

attacks in New York, Virginia and Pennsylvania;

(b)  The precise number of all Class members and their identities

are unknown at the present time but will be determined through discovery;

(c)     It would be highly impractical and a waste of judicial resources for each of those approximately 3,062 [as of February 15, 2002, 2,838 dead or missing at the World Trade Center; 184 dead or missing at the Pentagon and 40 deceased in Pennsylvania] Class Plaintiffs to be individually represented in separate actions or a single action; and

(d)     Each of the putative Class Plaintiffs seek to recover damages by the identical conduct of the defendants.

192.   <u>Commonality of Factual and Legal Questions</u>:  Common questions of law and fact exist as to all members of the Plaintiff Class.  These common legal and factual questions include, but are not limited to, the following:

(a)     Whether damages alleged by Class Plaintiffs were proximately caused by the conduct of the defendants;

(b)     Whether the actions and conduct of the defendants violated the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §1961 *et seq.;*

(c)     Whether defendants are liable to Class Plaintiffs for damages for wrongful death and survival and whether the defendants are liable to Class Plaintiffs for damages pursuant to the Alien Tort Act and the Torture Victim Act;

(d)     Whether Defendants are liable to Class Plaintiffs for punitive

damages;

      (e)     What is the proper methodology for calculating damages for members of the Plaintiff Class;

      (f)     Can members of the Plaintiff Class gain access to those assets of Defendants that have been frozen by the United States Department of Treasury in order to satisfy their judgment; and

      (g)     Can members of the Plaintiff Class gain access to those assets of Defendants that have been frozen by Foreign States in order to satisfy their judgment.

193.   <u>Typicality</u>:  The claims of the Named Plaintiffs are typical of the claims of all members of the Class in that:

      (a)     The Named Plaintiffs and all other Class Plaintiffs suffered damages as the result of identical conduct and acts of the defendants;

      (b)     Defendants used identical instruments, methods and plans to inflict harm upon the Named Plaintiffs and all other Class Plaintiffs;

      (c)     The methodology used to compute compensatory damages will be identical for the Named Plaintiffs and all other members of the Plaintiff Class; and

      (d)     Punitive damages should be awarded against the Defendants for singular acts that impacted the Named Plaintiffs and all other Plaintiff Class members.

194.   <u>Adequacy of Class Representatives</u>:  The Named Plaintiffs are adequate representatives of the Class Plaintiffs in that:

(a)    There is no conflict of interest among or between the Named Plaintiffs and any Class Plaintiffs, nor is their a conflict of interest between or among the other members of the Plaintiff Class;

(b)    The Class Representatives have adequate financial resources to assure that the interests of the Class will not be harmed; and

(c)    Members of the Class will be adequately represented by the Named Plaintiffs and their Counsel who are experienced in class action litigation.

195.   <u>Predominance of Common Issues and Efficiency of Class Treatment</u>:  The common issues of fact and law enumerated above predominate over any individual factual or legal issues, and a Class Action is a superior method for the fair and efficient adjudication of those issues in that:

(a)    Individualized litigation presents a potential for inconsistent or contradictory judgments and increases the burden and expense to all parties and to the court system;

(b)    By contrast, the class action device presents far fewer management difficulties and provides the benefits of a single adjudication, economies of scale, and comprehensive supervision by a single court; and

(c)    The claims of the Named Plaintiffs and each Class Plaintiff as

set forth above shall be governed by either federal law or substantially identical state law.

**WHEREFORE**, Class Plaintiffs request that this Honorable Court certify this matter as a Class Action and award Class Plaintiffs damages on each of the causes of action stated above plus interest, costs, and such other relief as this Honorable Court deems appropriate to prevent the defendants from ever again committing the terrorist acts of September 11, 2001 or similar acts.

Respectfully submitted,

_____
Thomas E. Mellon, Jr., Esquire
Identification No. PA 16767
MELLON, WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
Telephone:  (215) 348-7700
*Pro Hac Vice*

_____
John A. Corr, Esquire
Identification No. PA 52820
MELLON, WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
Telephone:  (215) 348-7700
*Pro Hac Vice*

_____
Stephen A. Corr, Esquire
Identification No. PA 65266
MELLON, WEBSTER & SHELLY
87 North Broad Street
Doylestown, PA  18901
Telephone:  (215) 348-7700
*Pro Hac Vice*


_____
H. Patrick Donohue, Esquire
Identification No. DC 279687
ARMSTRONG, DONOHUE, CEPPOS,
& VAUGHAN, CHARTERED
204 Monroe Street, Suite 101
Rockville, MD  20850
Telephone:  (301) 251-0440

**Attorneys for Plaintiffs**


Dated:  February _____, 2002